1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**STRAUSS BORRELLI PLLC**
Raina Borrelli, *admitted pro hac vice*
raina@straussborrelli.com
One Magnificent Mile
980 N. Michigan Avenue, Ste. 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109

**FEDERMAN & SHERWOOD**
William B. Federman, *admitted pro hac vice*
Kennedy M. Brian, *admitted pro hac vice*
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Tel: (405) 235-1560
wbf@federmanlaw.com
kpb@federmanlaw.com

*Proposed Settlement Class Counsel*
*Additional Counsel Listed on Signature Page*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KYLE MCDANIEL, RIKKI MCDANIEL, JON WILLIAMS, MOJDEH WILLIAMS,** and **TOM SIMMONS,** on behalf of themselves and all similarly situated individuals,<br><br>          Plaintiffs,<br><br>v.<br><br>**TOSHIBA GLOBAL COMMERCE SOLUTIONS, INC.,**<br><br>          Defendants. | Case No. 8:24-cv-01772-FWS-ADS<br><br>Hon. Judge Fred W. Slaughter<br><br>**NOTICE OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT**<br><br>**Date: June 12, 2025**<br>**Time: 10:00 a.m.**<br>**Location:  Courtroom 10-D** |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

   **PLEASE TAKE NOTICE THAT** on Thursday, **June 12, 2025**, at **10:00 a.m.** or as soon thereafter as the matter may be heard by the Honorable Fred W. Slaughter of the United States District Court for the Central District of California, Southern Division, located in Courtroom 10-D at the Ronald Reagan Federal Building and United States Courthouse, 411 West 4th Street, Room 1053, Santa Ana, CA 92701-4516, Plaintiffs, through their undersigned counsel of record, will and hereby do move pursuant to Federal Rule of Civil Procedure 23 for entry of an order:

   (1)    conditionally certifying the Settlement Class;

   (2)    granting preliminary approval of the Settlement Agreement;

   (3)    appointing Plaintiffs Kyle McDaniel, Rikki McDaniel, Jon Williams, Mojdeh Williams, and Tom Simmons (collectively, "Plaintiffs") as Class Representatives;

   (4)    appointing Raina Borrelli and Andrew Gunem of Strauss Borrelli PLLC and Kennedy M. Brian and William B. Federman of Federman & Sherwood as Class Counsel ("Proposed Settlement Class Counsel");

   (5)    approving the notice program and notices;

   (6)    directing that notice be sent to the Settlement Class Members;

   (7)    approving the Claim Form and claims process;

   (8)    ordering the Settlement's opt-out and objection procedures;

   (9)    appointing the Claims Administrator;

   (10) staying all deadlines in the Action pending Final Approval of the Settlement;

   (11) setting a date for the Final Fairness Hearing;

1  (12) granting such other relief and further relief as the Court deems just and

2 proper.

3  This Motion is based on this Notice of Motion, the supporting Memorandum

4 of Points and Authorities, the Settlement Agreement (**Exhibit 1**), Raina Borrelli's

5 Declaration (**Exhibit 2**), all pleadings herein, and any other matter of which this

6 Court may take judicial notice.

7  Proposed Settlement Class Counsel conferred with Defendant, and Defendant

8 does not oppose the relief sought by Plaintiffs.

9

10 Dated: April 17, 2025   By: */s/ Raina C. Borrelli*
         Raina C. Borrelli (*pro hac vice*)

11         Andrew G. Gunem (SBN 354042)
         STRAUSS BORRELLI PLLC

12         One Magnificent Mile
         980 N Michigan Avenue, Suite 1610

13         Chicago IL, 60611
         Telephone: (872) 263-1100

14         Facsimile: (872) 263-1109
         raina@straussborrelli.com

15         agunem@straussborrelli.com

16

17         William B. Federman (*pro hac vice*)
         Kennedy M. Brian (*pro hac vice*)

18         FEDERMAN & SHERWOOD
         10205 N. Pennsylvania Ave.

19         Oklahoma City, OK 73120

20         T: (405) 235-1560
         F: (405) 239-2112

21         E: wbf@federmanlaw.com
         E: kpb@federmanlaw.com

22

23        ***Proposed Settlement Class Counsel***

24

25         Byron T. Ball
         (State Bar No. 150195)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

THE BALL LAW FIRM APC
100 Wilshire Blvd., Suite 700
Santa Monica, CA 90401
Telephone: (310) 980-8039
Facsimile: (415) 477-6710
Email: btb@balllawllp.com

***Additional Plaintiffs' Counsel***

# **TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND ...........................1

III. SUMMARY OF THE PROPOSED SETTLEMENT TERMS...........2

   A.   The Settlement Class ....................................................................2

   B.   The Non-Reversionary Settlement Fund......................................3

   C.   Settlement Benefits......................................................................3

   D.   Business Practice Changes and Confirmatory Discovery.............5

   E.   The Proposed Notice Program. ....................................................5

   F.   Objection and Opt-Outs................................................................6

   G.   Attorneys' Fees, Costs, Expenses and Service Awards. ...............7

IV. THE PROPOSED SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE ..................................................................................7

   A.   *Hanlon* Factors 4, 6 and Fed. R. Civ. P. 23(e)(2)(B): the Settlement was Negotiated at Arm's Length; there is No Evidence of Collusion; and the Stage in Which the Settlement was Reached Supports Preliminary Approval.........9

   B.   *Hanlon* Factors 3 and 5: the Amount Offered in Settlement and the Experience and Views of Counsel................................................................11

   C.   Fed. R. Civ. P. 23(e)(2)(A): Proposed Settlement Class Counsel and the Proposed Class Representative are Adequate Representatives.....................13

   D.   *Hanlon* Factors 1, 2 and Fed. R. Civ. P. 23(e)(2)(C)(i): the Strength of Plaintiffs' Case; the Risk, Expense, Complexity, and Likely Duration of Further Litigation; and the Costs, Risks, and Delay of Trial and Appeal.....14

   E.   Fed. R. Civ. P. 23(e)(2)(C)(iii): the Terms of Any Proposed Award of Attorneys' Fees.........................................................17

F.   Fed. R. Civ. P. 23(e)(2)(C)(iv): Any Agreement Required to be Identified. 18

G.   Fed. R. Civ. P. 23(e)(2)(C)(ii): the Method of Distributing Relief is Effective. ……………………………………………………………………….18

H.   Fed. R. Civ. P. 23(e)(2)(D): Class Members are Treated Equitably Relative to Each Other. ..................................................................................................19

I.    *Hanlon* Factor 7: the Reaction of the Class. ...................................................20

V. THE COURT SHOULD PROVISIONALLY CERTIFY THE CLASS FOR SETTLEMENT PURPOSES ..............................................................................20

A.   The Settlement Class Meets the Requirements of 23(a). ..............................21

B.   The Settlement Class Meets the Requirements of 23(b)(3). .........................22

VI. THE PROPOSED NOTICE PROGRAM CONSTITUTES ADEQUATE NOTICE UNDER RULE 23 AND SHOULD BE APPROVED. ........................24

VII.      CONCLUSION ..................................................................................24

# TABLE OF AUTHORITIES

**CASES**

*Acosta v. Trans Union, LLC,*

  243 F.R.D. 377 (C.D. Cal. 2007)............................................................................7

*Amchem Prods., Inc. v. Windsor,*

  521 U.S. 591 (1997).............................................................................19, 20, 21

*Barbosa v. Cargill Meat Sols. Corp.,*

  297 F.R.D. 431 (E.D. Cal. 2013).......................................................................16

*Carter v. Vivendi Ticketing US LLC,*

  No. SACV2201981CJCDFMX, 2023 WL 8153712 (C.D. Cal. Oct. 30, 2023) . 10

*Class Plaintiffs v. City of Seattle,*

  955 F.2d 1269 (9th Cir. 1992) ..............................................................................7

*Cmty. Res. for Indep. Living v. Mobility Works of California, LLC,*

  533 F. Supp. 3d 881 (N.D. Cal. 2020)................................................................10

*Cohen v. Coca-Cola Co.,* No. LA CV19-04083 JAK (PLAX),

  2022 WL 22879570 (C.D. Cal. Feb. 18, 2022) ....................................................8

*Corra v. ACTS Ret. Servs., Inc.,* No. CV 22-2917,

  2024 WL 22075 (E.D. Pa. Jan. 2, 2024)............................................................13

*Desue v. 20/20 Eye Care Network, Inc.,*

  No. 21-CIV-61275-RAR, 2023 WL 4420348 (S.D. Fla. July 8, 2023) ..............11

*Fox v. Iowa Health Sys.,*

  No. 3:18-CV-00327-JDP, 2021 WL 826741 (W.D. Wis. Mar. 4, 2021)............13

*Fulton-Green v. Accolade, Inc.,*

  No. 18-274, 2019 WL 4677954 (E.D. Pa. Sept. 24, 2019) ................................13

*Gaston v. FabFitFun, Inc.*,

   2021 WL 6496734 (C.D. Cal. Dec. 9, 2021)........................................................14

*Gordon v. Chipotle Mexican Grill, Inc.*,

   No. 17-cv-01415-CMA-SKC, 2019 WL 6972701 (D. Colo. Dec. 16, 2019).....13

*Hanlon v. Chrysler Corp.*,

   150 F.3d 1011 (9th Cir. 1998). .........................................................................8, 20

*Harbour v. California Health & Wellness Plan*,

   No. 5:21-CV-03322-EJD (N.D. Cal. Jan. 16, 2024) ...........................................10

*Hashemi v. Bosley, Inc.*,

   No. CV 21-946 PSG (RAOX), 2022 WL 18278431 (C.D. Cal. Nov. 21, 2022)..

   ...................................................................................................................14, 15

*In re Anthem, Inc. Data Breach Litig.*,

   327 F.R.D. 299 (N.D. Cal. 2018) .......................................................................15

*In re Banner Health Data Breach Litig.*,

   No. 2:16-CV-02696-SRB, 2020 WL 12574227 (D. Ariz. Apr. 21, 2020).........18

*In re Blackbaud, Inc., Customer Data Breach Litig.*,

   No. 3:20-MN-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024).............14

*In re Blackbaud, Inc., Customer Data Breach Litig.*,

   No. 3:20-MN-02972-JFA, 2024 WL 5247287 (D.S.C. Dec. 30, 2024).............14

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,

   No. 3:08-1998, 2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) ..........................14

*In re Forefront Data Breach Litig.*,

   No. 21-CV-887, 2023 WL 6215366 (E.D. Wis. Mar. 22, 2023).........................17

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,

   293 F.R.D. 21 (D. Me. 2013)..............................................................................14

*In re High-Tech Employee Antitrust Litig.*,

    No. 11-CV-02509, 2014 WL 3917126 (N.D. Cal. Aug. 8, 2014) .........................7

*In re Novant Health, Inc.*,

    No. 1:22-CV-697, 2024 WL 3028443 (M.D.N.C. June 17, 2024) ....................16

*In re Omnivision Techs., Inc.*,

    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...............................................................18

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,

    No. 1:17-md-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) ..................13

*In re Stable Rd. Acquisition Corp.*,

    No. 2:21-CV-5744-JFW(SHKX), 2024 WL 3643393 (C.D. Cal. Apr. 23, 2024)

    ..............................................................................................................................16

*In re Tableware Antitrust Litig.*,

    No. C-04-3514 VRW, 2007 WL 4219394 (N.D. Cal. Nov. 28, 2007) ..............10

*In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*,

    No. 1:14-MD-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016)........19

*Krant v. UnitedLex Corp.*,

    No. 23-2443-DDC-TJJ, 2024 WL 5187565 (D. Kan. Dec. 20, 2024) ...............16

*Lalli v. First Team Real Est.-Orange Cnty.*,

    No. 820CV00027JWHADS, 2022 WL 8207530 (C.D. Cal. Sept. 6, 2022) .......12

*Linney v. Cellular Alaska P'ship*,

    151 F.3d 1234 (9th Cir. 1998) .............................................................................7

*Marshall v. Northrop Grumman Corp.*,

    No. 16-CV-6794 AB (JCX), 2020 WL 5668935 (C.D. Cal. Sept. 18, 2020) .....16

*Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*,

    311 F.R.D. 590 (C.D. Cal. 2015).........................................................................19

*Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*,
   2009 WL 9100391 (C.D. Cal. June 24, 2009) ................................................... 16

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ................................................................ 11, 15

*Perez v. Bodycote Thermal Processing, Inc.*,
   No. CV 22-00145 RAO, 2024 WL 4329057 (C.D. Cal. Aug. 23, 2024) ............ 15

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ............................................................................ 19

*Swans v. Fieldworks, LLC*,
   No. 2:22-cv-07250, 2024 WL 1893327 (C.D. Cal. Apr. 12, 2024) ..................... 7

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) .......................................................................................... 21

*Wahl v. Yahoo! Inc.*,
   No. 17-CV-02745-BLF, 2018 WL 6002323 (N.D. Cal. Nov. 15, 2018) ............ 18

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .......................................................................................... 19

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) .......................................................................... 21

**RULES**

Fed. R. Civ. P. 23 .................................................................................................. 1, 7

**TREATISES**

4 A Conte & H. Newberg, Newberg on Class Actions, § 11:50 (4th ed.2002) ..... 15

Manual for Complex Litigation (Fourth) § 21.632 (2004) ...................................... 7

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiffs respectfully move under Federal Rule of Civil Procedure ("Rule") 23, for preliminary approval of a class action settlement between Plaintiffs and Defendant Toshiba Global Commerce Solutions, Inc. ("TGCS" or "Defendant") (together with Plaintiffs, the "Parties"). The proposed Class Action Settlement Agreement (the "Agreement" or "Settlement Agreement"),[1]  if approved, will resolve the claims asserted by Plaintiffs and the Settlement Class and will provide substantial monetary and injunctive relief to Settlement Class Members whose personally identifiable information ("PII") may have been compromised in a data security incident occurring on or around December 4, 2023 (the "Data Incident").

### II.   FACTUAL AND PROCEDURAL BACKGROUND

TGCS is a subsidiary of the Japanese technology company, Toshiba, and provides retail store technology. (Second Am. Class Action Compl. ("Compl."), ¶ 2, (filed concurrently herewith)).

Plaintiffs allege that on or around December 4, 2023, cybercriminals gained access to TGCS' security systems and accessed PII stored on Defendant's computer systems. (*Id.* ¶ 2). The information potentially accessed during the Data Incident included TGCS's current and former employees' names and Social Security numbers. (*Id.* ¶ 4). TGCS notified approximately 6,258 individuals that their PII was potentially compromised as a result of the Data Incident in or around July and November 2024. (SA at p. 2).

---

[1] The Settlement Agreement ("SA") is attached hereto as **Exhibit 1**. All capitalized terms not defined herein shall have the meaning ascribed to it in the Settlement Agreement.

After the announcement of the Data Incident, on August 13, 2024, Plaintiff Kyle McDaniel filed a lawsuit asserting claims against Toshiba America Business Solutions, Inc. ("TABS") relating to the Data Incident. (*See* ECF No. 1). Plaintiff Kyle McDaniel filed his First Amended Class Action Complaint on December 10, 2024, and added Plaintiffs Rikki McDaniel, Jon Williams, and Mojdeh Williams. (*See* ECF No. 17). TGCS was also added as a Defendant. (*Id.*). After conversations with defense counsel for TABS and TGCS, it was determined that TGCS was the proper Defendant for the claims alleged by Plaintiffs Kyle McDaniel, Rikki McDaniel, Jon Williams, and Mojdeh Williams.[2]

After determining the proper defendant, Proposed Settlement Class Counsel engaged in extensive arm's length settlement negotiations, over the course of several months, that included the informal exchange of information necessary to evaluate the Parties' respective strengths and weaknesses. After significant negotiations, the Parties reached the Settlement Plaintiffs now presents to the Court for preliminary approval.

## III.    SUMMARY OF THE PROPOSED SETTLEMENT TERMS

### A. The Settlement Class

The Settlement Agreement encompasses two settlement classes, for settlement purposes only:

**<u>Settlement Class</u>**

[A]ll United States residents who were mailed notice by TGCS that their personal information was impacted in a data incident beginning on approximately December 4, 2023. However, the Settlement Class specifically

---

[2] Plaintiffs have voluntarily dismissed TABS from this action. The Second Amended Complaint, filed concurrently herewith, adds Tom Simmons as an additional plaintiff.

excludes: (i) TGCS, its subsidiaries, parent companies, successors, predecessors, and any entity in which TGCS or its parents have a controlling interest, and their officers and directors; (ii) all Settlement Class Members who validly request exclusion from the Settlement Class by the Opt-Out Date; (iii) any judges assigned to this case and members of their direct families; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge.

(*Id.* ¶ 1.32).

### California Settlement Subclass

[T]hose Settlement Class Members residing in California who were mailed notification of the Data Incident from TGCS at a California address.

(*Id.* ¶ 1.2).

**B. The Non-Reversionary Settlement Fund.**

Pursuant to the terms of the Settlement Agreement, TGCS will establish a non-reversionary common fund of $435,000.00. (*Id.* ¶ 1.34). The Settlement Fund will be used to pay for: (i) all Valid Claims; (ii) all Costs of Claims Administration; (iii) any service award payments approved by the Court to the Representative Plaintiffs; (iv) attorneys' fees and costs as approved by the Court; and (v) any other payments authorized by the Settlement Agreement. (*Id.* ¶ 2.4).

**C. Settlement Benefits.**

The Settlement provides many meaningful benefits for Class Members to choose from. These benefits include:

<u>Out-of-Pocket Expense Reimbursement</u>: All Settlement Class Members who have suffered a proven monetary loss and who submit a Valid Claim using the Claim Form are eligible for reimbursement of up to seven thousand five hundred

dollars ($7,500.00) if: (i) the loss is an actual, documented, and unreimbursed monetary loss; (ii) the loss was more likely than not caused by the Data Incident; (iii) the loss occurred between December 4, 2023 and the Claims Deadline; (iv) the Settlement Class Member made reasonable efforts to avoid, or seek reimbursement for, the loss,

including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance; and (v) the Settlement Class Member has not submitted a valid and approved claim in the settlement of *Gregerson v. Toshiba America Business Solutions, Inc.*, 8:24-cv-01201-FWS-ADS (C.D. Cal).[3] (*Id.* ¶ 3.2).

California Settlement Subclass Payment: Additionally, all California Settlement Subclass Members may make a claim for a $150.00 cash payment, provided that such member has not submitted a valid and approved claim in the settlement of *Gregerson v. Toshiba America Business Solutions, Inc.*, 8:24-cv-01201-FWS-ADS (C.D. Cal.). (*Id.* ¶ 3.4).

*Pro Rata* Cash Payment: Lastly, all Settlement Class Members may make a claim for a *pro rata* distribution of the cash that remains in the Settlement Remainder, if any, after payment of all Costs of Claims Administration, any service

---

[3] Also pending before the Court is the class action settlement reached in *Gregerson v. Toshiba America Business Solutions, Inc.*, 8:24-cv-01201-FWS-ADS (C.D. Cal) ("*Gregerson* Action"). The *Gregerson* Action arises from the same data security incident as the present action (the "*McDaniel* Action") but asserts claims against a different Toshiba subsidiary—TABS. In other words, two Toshiba subsidiaries—TABS and TGCS—were impacted by the same data security incident. There were a small number of individuals who received notice of the data security incident from both TGCS and TABS, however the Parties were careful to ensure that the releases between the *Gregerson* Action settlement and the present action did not overlap. (Borrelli Decl., ¶ 7). The carve out above (and throughout the Settlement Agreement for the *McDaniel* Action) was included to ensure a Settlement Class Member could not recover twice for the harm suffered due to one data security incident.

award payments approved by the Court to the Representative Plaintiffs, attorneys'
fees and costs as approved by the Court, and Valid Claims for Out-of-Pocket
Expense Reimbursement and California Settlement Subclass Payment, provided
that such member has not submitted a valid and approved claim in the settlement of
*Gregerson v. Toshiba America Business Solutions, Inc.*, 8:24-cv-01201-FWS-ADS
(C.D. Cal.). (*Id.* ¶ 3.5).

### D. Business Practice Changes and Confirmatory Discovery.

In connection with these settlement negotiations, TGCS has acknowledged
(without any admission of liability) that TGCS has made certain systems or business
practice changes to mitigate the risk of similar data incidents in the future. (*Id.* ¶
3.9). TGCS has provided reasonable access to confidential confirmatory discovery
regarding the number of Settlement Class Members and state of residence, the facts,
and circumstances of the Data Incident and TGCS's response thereto, and the
changes and improvements that have been made or are being made to further protect
Settlement Class Members' PII. (*Id.* ¶ 3.10).

### E. The Proposed Notice Program.

To notify the Settlement Class Members of the Settlement and their rights
thereunder, the Parties formulated a notice plan intended to provide the Settlement
Class with the best practicable notice under the circumstances, in accordance with
Due Process.

No later than fourteen (14) days after entry of the Preliminary Approval
Order, TGCS will provide the Claims Administrator—RG/2 Claims
Administration—with the name and last known physical address of each Settlement
Class Member. (*Id.* ¶ 4.2(a)). The Claims Administrator will then mail the Short
Notice to the Class, after first running the Settlement Class Member data through

the United States Postal Service ("USPS") National Change of Address database to update any change of address on file with the USPS. (*Id.* ¶ 4.2(c)). In the event the mailed Short Notice is returned to the Claims Administrator by the USPS because the address of the recipient is no longer valid, and the envelope contains a forwarding address, the Claims Administrator will re-send the Short Notice to the forwarding address within seven (7) days of receiving the returned Short Notice. (*Id.*). In the event that subsequent to the first mailing of a Short Notice, and at least fourteen (14) days prior to the Opt-Out and Objection Deadline, a Short Notice is returned to the Claims Administrator by the USPS because the address of the recipient is no longer valid, i.e., the envelope is marked "Return to Sender" and does not contain a new forwarding address, the Claims Administrator will perform a standard skip trace, in the manner that the Claims Administrator customarily performs skip traces, in an effort to attempt to ascertain the current address of the particular Settlement Class Member in question and, if such an address is ascertained, the Claims Administrator will re-send the Short Notice within seven (7) days of receiving such information. (*Id.*). The Claims Administrator will also establish a Settlement Website and a toll-free hotline. (*Id.* ¶¶ 4.2(b), 4.2(e)).

### F. Objection and Opt-Outs.

The Settlement allows a sufficient period of time for Settlement Class Members who do not want to take advantage of the Settlement's benefits to opt-out or object. (*Id.* ¶¶ 5.1, 6.1).

Pursuant to the terms of the Settlement Agreement, any Settlement Class Member desiring to object to the Settlement Agreement must submit a timely written notice of his or her objection by the Objection Date. (*Id.* ¶ 6.1). All written objections and supporting papers must be submitted to the Court and (a) clearly

identify the case name and number, (b) be submitted to the Court either by filing them electronically or in person at any location of the United States District Court for the Central District of California or by mailing them to the Court, and (c) be filed or postmarked on or before the deadline established by the Court (anticipated to be 60 days after the Notice Commencement Date). (*Id.*).

Furthermore, any person wishing to opt-out of the Settlement Class shall individually sign and timely submit written notice of such intent to the designated Post Office box established by the Claims Administrator. (*Id.* ¶ 5.1). The written notice must clearly manifest  the individual's intent to opt-out of the Settlement Class. (*Id.*). To be effective, it must be postmarked no later than sixty (60) days after the Notice Commencement Date. (*Id.*).

### G. Attorneys' Fees, Costs, Expenses and Service Awards.

Lastly, in recognition of the hard work and considerable risk Proposed Settlement Class Counsel and Plaintiffs faced, the Settlement Agreement allows Proposed Settlement Class Counsel to seek: (i) up to one-third (1/3) of the Settlement Fund to pay for Proposed Settlement Class Counsel's attorneys' fees, costs, and expenses; and (ii) a $5,000.00 service award to the Class Representatives. (*Id.* ¶¶ 8.2–8.3).

## IV.  THE PROPOSED SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE

Parties seeking approval of a class action settlement must satisfy the requirements of Federal Rule of Civil Procedure 23(e). Pursuant to Rule 23(e), class action settlements are permitted "only with the court's approval ...after a hearing and only on a finding that [the agreement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). "Rule 23(e)… require[s] a two-step process for the approval of

class action settlements: the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *In re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509, 2014 WL 3917126, at *13 (N.D. Cal. Aug. 8, 2014) (internal quotations and citations omitted). "At the preliminary approval stage, the court 'must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms.'" *Swans v. Fieldworks, LLC*, No. 2:22-cv-07250, 2024 WL 1893327 (C.D. Cal. Apr. 12, 2024) (citing Manual for Complex Litigation (Fourth) § 21.632 (2004)). However, the "settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in original). There is a strong judicial policy in the Ninth Circuit that favors the settlement of class actions. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1269, 1276 (9th Cir. 1992); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998).

To evaluate the fairness, reasonableness, and adequacy of a class action settlement, the Ninth Circuit has formulated the following factors for district courts to consider: (1) the strength of the Plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the amount offered in settlement; (4) the extent of discovery completed and the stage of the proceedings; (5) the experience and views of counsel; (6) any evidence of collusion between the parties; and (7) the reaction of the class members to the proposed settlement (collectively, the "*Hanlon* factors"). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

Federal Rule of Procedure 23(e)(2) was amended in 2018 and provides further guidance as to the requisite consideration when evaluating whether a class

action settlement is fair, adequate, and reasonable:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

As the Advisory Committee comments explain, "[t]he goal of [the] amendment [was] not to displace any factor" that would have been relevant prior to the amendment, but rather to address inconsistent "vocabulary" that had arisen among the circuits and "to focus the court and the lawyers on the core concerns" of the fairness inquiry." *Cohen v. Coca-Cola Co.*, No. LA CV19-04083 JAK (PLAX), 2022 WL 22879570, at *5 (C.D. Cal. Feb. 18, 2022) (quoting Advisory Committee Comments to 2018 Amendments to Rule 23, Subdivision (e)(2)).

**A. *Hanlon* Factors 4, 6 and Fed. R. Civ. P. 23(e)(2)(B): the Settlement was Negotiated at Arm's Length; there is No Evidence of Collusion; and the Stage in Which the Settlement was Reached Supports Preliminary Approval.**

The Settlement presented to the Court for preliminary approval was negotiated at arm's length and without collusion in accordance with Rule 23(e)(2)(B) and *Hanlon* Factor 6.

1          Shortly after the Data Incident was announced by TGCS, Proposed

2    Settlement Class Counsel quickly worked to: (i) investigate the factual

3    underpinning of the Data Incident; (ii) identify potential forums for initiating the

4    class action lawsuit; (iii) research and evaluate the potential legal claims to

5    determine their probability for success; (iv) interviewed individuals impacted by the

6    Data Incident; and (v) drafted the complaint that initiated the lawsuit. (Declaration

7    of Raina Borrelli in Support of Plaintiffs' Unopposed Motion for Preliminary

8    Approval of Class Action Settlement ("Borrelli Decl."), ¶ 8 (attached hereto as

9    **Exhibit 2**). Once the lawsuit was filed, and the proper defendant was determined,

10   TGCS expressed interest in early settlement negotiations due to: (i) the small size

11   of the Class; and (ii) the pending resolution of the *Gregerson* Action. (*Id.* ¶ 9).

12   Before engaging in settlement negotiations, Proposed Settlement Class Counsel

13   requested, received, and/or reviewed informal discovery from Defendant regarding

14   the Data Incident, affected Class Members, and its remediation efforts.[4] (*Id.*). After

15   thoroughly evaluating the strengths and weaknesses of the case, Proposed

16   Settlement Class Counsel engaged in extensive arm's length settlement negotiations

17   with counsel for TGCS over the span of many months. (*Id.*). Proposed Settlement

18   Class Counsel used their knowledge from prosecuting other data breach class action

19   settlements to negotiate the Settlement achieved here. (*Id.*). The fact that the

20

---

21   [4] Although formal discovery was not completed, this does not prohibit preliminary

22   approval of the Settlement. "In the context of class action settlements, 'formal
     discovery is not a necessary ticket to the bargaining table' where the parties have

23   sufficient information to make an informed decision about settlement." *Linney v.*
     *Cellular Alaska P'ship,* 151 F.3d 1234, 1239 (9th Cir. 1998). This is certainly the

24   case here, where Proposed Settlement Class Counsel obtained sufficient informal
     discovery that allowed them to evaluate the strengths and weaknesses of Plaintiffs'

25   claims before negotiating a Settlement. (Borrelli Decl., ¶ 9).

Settlement was achieved through well-informed arm's length negotiations between counsel with significant experience in data breach class actions weighs in favor of preliminary approval. *See Cmty. Res. for Indep. Living v. Mobility Works of California, LLC*, 533 F. Supp. 3d 881, 889 (N.D. Cal. 2020) ("Where, as here, an agreement is the product of "serious, informed, non-collusive negotiations" conducted by experienced counsel over an "extended period of time," those facts will weigh in favor of approval.") (citation omitted); *In re Tableware Antitrust Litig.*, No. C-04-3514 VRW, 2007 WL 4219394, at *3 (N.D. Cal. Nov. 28, 2007) (granting final approval, and holding that "extended negotiations that culminated in the settlement indicate that the agreement here was reached in a procedurally sound manner").

**B.** *Hanlon* **Factors 3 and 5: the Amount Offered in Settlement and the Experience and Views of Counsel.**

Through Proposed Settlement Class Counsel's efforts and negotiations, Proposed Settlement Class Counsel achieved a non-reversionary settlement fund of $435,000.00 for approximately 6,255 Settlement Class Members.[5] (SA, ¶ 1.32). The Settlement provides two (2) components of relief: (i) cash payments to Settlement Class Members; and (ii) meaningful business practice changes. (*Id.* ¶¶ 3.2–3.5, 3.9). Under the monetary component, all Settlement Class Members are eligible to submit a claim for an Out-of-Pocket Expense Reimbursement of up to $7,500.00

---

[5] The Settlement equates to an approximate per person value of $63.20. This amount far exceeds the per person value achieved in many other data breach cases. *See, e.g., Carter v. Vivendi Ticketing US LLC*, No. SACV2201981CJCDFMX, 2023 WL 8153712 (C.D. Cal. Oct. 30, 2023) (data breach settlement with approximate per person value of $6.86); *Harbour v. California Health & Wellness Plan*, No. 5:21-CV-03322-EJD, ECF Nos. 52, 63 (N.D. Cal. Jan. 16, 2024) (data breach settlement with approximate per person value of $6.34).

and a *Pro Rata* Cash Payment. (*Id.* ¶¶ 3.2, 3.5). Additionally, all California Subclass Members will be permitted to submit a claim for a $150.00 cash payment. (*Id.* ¶ 3.4). As to the second component, TGCS has acknowledged (without any admission of liability) that it has made certain systems or business practice changes to mitigate the risk of similar data incidents in the future. (*Id.* ¶ 3.9). These are meaningful benefits that mirror the relief Class Members could expect to receive only after a successful trial. In sum, the Settlement addresses the type of injuries and repercussions sustained by Settlement Class Members in the wake of the Data Incident and offers significant compensation to make each Settlement Class Member "whole." "[T]hrough the Settlement, Plaintiffs and Class Members gain benefits without having to face further risk." *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-CIV-61275-RAR, 2023 WL 4420348, at *8 (S.D. Fla. July 8, 2023); *see also Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial.").

This exceptional Settlement was only obtained through the experience and skill of Proposed Settlement Class Counsel. (Borrelli Decl., ¶ 12). Proposed Settlement Class Counsel are highly experienced in this area of practice and have a well-respected reputation in the data privacy litigation sector. (*Id.*). Proposed Settlement Class Counsel worked hard and at great risk on behalf of the Settlement Class to obtain information from TGCS regarding the Data Incident and utilized their experience and knowledge gained from other data breach class actions to negotiate a favorable Settlement here. (*Id.*). Based on the experience and views of Proposed Settlement Class Counsel, this is an excellent result for the Settlement

Class, which militates in favor of preliminary approval. (*Id.* ¶ 18); *see also Lalli v. First Team Real Est.-Orange Cnty.*, No. 820CV00027JWHADS, 2022 WL 8207530, at *9 (C.D. Cal. Sept. 6, 2022) (granting final approval of settlement where the Court was satisfied that Class Counsel's experience "allowed them to evaluate the merits of the claims and risks associated with prosecuting them" and "Class Counsel also staunchly support[ed] the final outcome as fair and reasonable").

### C. Fed. R. Civ. P. 23(e)(2)(A): Proposed Settlement Class Counsel and the Proposed Class Representative are Adequate Representatives.

Rule 23(e)(2)(A) requires the Court to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). Here, both the Class Representatives and Proposed Settlement Class Counsel adequately represented the Settlement Class.

The Class Representatives pursued this litigation on behalf of the Class for the benefit of the Class. The Class Representatives demonstrated their adequacy by: (i) selecting well-qualified counsel; (ii) producing information and documents to their counsel to permit investigation and development of the complaints; (iii) being available as needed throughout the litigation; (iv) monitoring the litigation; (v) being willing to endure invasive discovery and depositions if needed; and (vi) reviewing the terms of the Settlement and the Settlement Agreement. (Borrelli Decl., ¶ 13). Plaintiffs' claims and interests align with those of the Settlement Class, and they approve of the Settlement. (*Id.*). Therefore, the Class Representatives have performed adequately.

Similarly, Proposed Settlement Class Counsel are adequate representatives. Proposed Settlement Class Counsel have extensive experience litigating complex

class actions and have demonstrated ample success in litigating data breach class actions. (*Id.* ¶ 14). Proposed Settlement Class Counsel have adequately represented the Class by: (i) fully investigating the facts and legal claims; (ii) preparing the complaints; (iii) requesting, obtaining, and reviewing informal discovery from TGCS regarding the Data Incident, affected Class Members, its remediation efforts and insurance coverage; and (iv) extensively negotiating the settlement terms. (*Id.*). The work done by Proposed Settlement Class Counsel to date provided Proposed Settlement Class Counsel with sufficient information to negotiate this very favorable Settlement for the Class. (*Id.*). Thus, Proposed Settlement Class Counsel were also adequate representatives, and this factor weighs in favor of preliminary approval.

### D. *Hanlon* Factors 1, 2 and Fed. R. Civ. P. 23(e)(2)(C)(i): the Strength of Plaintiffs' Case; the Risk, Expense, Complexity, and Likely Duration of Further Litigation; and the Costs, Risks, and Delay of Trial and Appeal.

Data breach litigation is a cutting-edge area of the law that presents numerous developing issues, evolving precedents, and unpredictable outcomes. *See, e.g.*, *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts. And of course, juries are always unpredictable."); *Gordon v. Chipotle Mexican Grill, Inc.,* No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex."); *Fulton-Green v. Accolade, Inc.*, No. 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (noting data breaches are a "risky field of litigation" because they "are

uncertain and class certification is rare."); *Fox v. Iowa Health Sys.*, No. 3:18-CV-00327-JDP, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result."); *Corra v. ACTS Ret. Servs., Inc.*, No. CV 22-2917, 2024 WL 22075, at *12 (E.D. Pa. Jan. 2, 2024) ("[T[he Court recognizes that data breach cases such as this one are complex and risky, and recovery at trial is decidedly uncertain—$350,000 in cash is significantly better than nothing."); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-1998, 2010 WL 3341200, at *6 (W.D. Ky. Aug. 23, 2010) (approving data breach settlement, in part, because "proceeding through the litigation process in this case is unlikely to produce the Plaintiffs' desired results). There was no clear path to success in this case. Indeed, not one data breach case has gone to trial. Despite these risks, Proposed Settlement Class Counsel undertook this litigation on behalf of Plaintiffs and the Class.

This case was particularly risky, and Plaintiffs faced substantial hurdles if the litigation were to continue. (Borrelli Decl., ¶¶ 15–16). Most notably, Plaintiffs faced the risk of surviving a motion to dismiss, a motion for summary judgment, and obtaining (and maintaining) class certification. The class certification stage alone has been proven fatal in many data breach cases. *See, e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013) (denying class certification in data breach class action); *Gaston v. FabFitFun, Inc.*, 2021 WL 6496734, at *3 (C.D. Cal. Dec. 9, 2021) ("Historically, data breach cases have experienced minimal success in moving for class certification."); *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) (denying motion for class certification in data breach case); *see also In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972-

JFA, 2024 WL 5247287 (D.S.C. Dec. 30, 2024) (denying motion for leave to file a renewed class certification motion). Though Plaintiffs and Proposed Settlement Class Counsel strongly believe in the merits of the claims asserted, Plaintiffs and Proposed Settlement Class Counsel acknowledge that proving causation and damages in the emerging area of data breach cases can be difficult and is by no means guaranteed. *See, e.g.*, *Hashemi v. Bosley, Inc.*, No. CV 21-946 PSG (RAOX), 2022 WL 18278431, at *4 (C.D. Cal. Nov. 21, 2022) (explaining that data breach class actions are a relatively new type of litigation and that damages methodologies in data breach cases are largely untested and have yet to be presented to a jury). Continued litigation would require formal discovery, depositions, expert reports, obtaining and maintaining class certification throughout trial, and summary judgment, as well as possible appeals (interlocutory and/or after the merits). (Borrelli Decl., ¶¶ 15–16). This would also require additional rounds of briefing and the possibility of no recovery at all. (*Id.*). The Settlement here guarantees relief to the Settlement Class whereas further protracted litigation would not.

For the reasons stated above, these factors heavily weigh in favor of preliminary approval. *See Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.") (citing 4 A Conte & H. Newberg, Newberg on Class Actions, § 11:50 at 155 (4th ed.2002); *Perez v. Bodycote Thermal Processing, Inc.*, No. CV 22-00145 RAO, 2024 WL 4329057, at *7 (C.D. Cal. Aug. 23, 2024) (granting final approval after noting "[h]ad the case not settled when it did, additional costs for discovery and litigation would have been incurred, which would have resulted in less money available for Class Members for

any later settlement"); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 318 (N.D. Cal. 2018) (granting final approval where "further litigation would have been costly and uncertain and would have detrimentally delayed any potential relief for the Class," whereas the relief provided by settlement was "timely, certain, and meaningful"); *Hashemi*, 2022 WL 2155117, at *7 ("In short, given the ongoing risks and uncertainties of data breach litigation, as well as the fact that the Settlement provides significantly greater value per Class Member as compared to similar data breach class action settlements, the Court concludes that the Settlement amount is within the range of approval.").

### E. Fed. R. Civ. P. 23(e)(2)(C)(iii): the Terms of Any Proposed Award of Attorneys' Fees.

Rule 23(e)(2)(C)(ii) requires consideration of "the terms of any proposed award of attorney's fees, including timing of payment." Pursuant to the terms of the Settlement Agreement, Proposed Settlement Class Counsel are permitted to seek: (i) up to one-third (1/3) of the Settlement Fund to pay for Proposed Settlement Class Counsel's attorneys' fees, costs, and expenses. (SA, ¶ 8.2). The Parties did not discuss the payment of attorneys' fees, costs, and expenses until after the substantive terms of the Settlement were agreed to. (*Id.* ¶ 8.1). The anticipated fee request falls in line with other class action cases and is within the range of approval. *See, e.g.*, *Marshall v. Northrop Grumman Corp.*, No. 16-CV-6794 AB (JCX), 2020 WL 5668935, at *8 (C.D. Cal. Sept. 18, 2020) ("An attorney fee of one third of the settlement fund is routinely found to be reasonable in class actions."); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 450 (E.D. Cal. 2013) (collecting cases awarding 33% of the common fund); *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, 2009 WL 9100391, at *4 (C.D. Cal. June 24, 2009)

(reviewing empirical research and stating: "[n]ationally, the average percentage of the fund award in class actions is approximately one-third."); *In re Stable Rd. Acquisition Corp.*, No. 2:21-CV-5744-JFW(SHKX), 2024 WL 3643393, at *13 (C.D. Cal. Apr. 23, 2024) (noting that in most common fund cases the fee award exceeds the 25% benchmark).

The anticipated fee request also falls in line with the amount awarded in other data privacy cases across the nation. *See, e.g.*, *In re Novant Health, Inc.*, No. 1:22-CV-697, 2024 WL 3028443 (M.D.N.C. June 17, 2024) (collecting cases awarding one-third of the common fund and approving the same); *Krant v. UnitedLex Corp.*, No. 23-2443-DDC-TJJ, 2024 WL 5187565, at *7 (D. Kan. Dec. 20, 2024) ("[A] one-third fee also aligns with those awarded by other courts in data breach class action cases."); *In re Forefront Data Breach Litig.*, No. 21-CV-887, 2023 WL 6215366, at *8 (E.D. Wis. Mar. 22, 2023) (awarding one-third of the settlement fund). Accordingly, this factor supports preliminary approval.

## F. Fed. R. Civ. P. 23(e)(2)(C)(iv): Any Agreement Required to be Identified.

Other than the Settlement Agreement and the agreement with the Claims Administrator to provide notice of the Settlement to the Settlement Class (if preliminarily approved) there are no other agreements required to be identified.

## G. Fed. R. Civ. P. 23(e)(2)(C)(ii): the Method of Distributing Relief is Effective.

"[T]he effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," is also a relevant factor in determining the adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii).

The Notice program and Claim Form were designed to encourage the filing of valid claims by Settlement Class Members. To file a claim, Settlement Class Members need only complete a simple Claim Form and submit it with documentation supporting any claimed losses or alternatively select a *Pro Rata* Cash Payment. Settlement Class Members may submit claims online or through the mail. This procedure is claimant-friendly, efficient, cost-effective, proportional, and reasonable under the particular circumstances of this case. Accordingly, the methods of distributing relief to Settlement Class Members further support that the Settlement is fair, reasonable, and adequate.

## H. Fed. R. Civ. P. 23(e)(2)(D): Class Members are Treated Equitably Relative to Each Other.

Rule 23(e)(2)(D) requires that the settlement "treat[] class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The proposed settlement does not discriminate between any segments of the Settlement Class. All Settlement Class Members are eligible to submit a claim for an Out-of-Pocket Expense Reimbursement of up to $7,500 and a *Pro Rata* Cash Payment. (SA, ¶¶ 3.2, 3.5). Additionally, all California Subclass Members will be permitted to submit a claim for a $150.00 cash payment. (*Id.* ¶ 3.4). The only difference among Settlement Class Members is that those who have substantiated financial losses will be compensated for those losses, and Class Members who would have statutory claims under California law will be compensated for their release of those claims. "It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008) (citation omitted).

While Proposed Settlement Class Counsel will seek Service Awards of $5,000.00 (*id.* ¶ 7.3) for the Class Representatives' services on behalf of the Settlement Class, Service Awards of this amount are regularly approved in this Circuit. *Wahl v. Yahoo! Inc.*, No. 17-CV-02745-BLF, 2018 WL 6002323, at *6 (N.D. Cal. Nov. 15, 2018) (awarding service award of $5,000 where the parties participated in informal discovery); *In re Banner Health Data Breach Litig.*, No. 2:16-CV-02696-SRB, 2020 WL 12574227, at *7 (D. Ariz. Apr. 21, 2020) (awarding service awards of $5,000 in data privacy case).Therefore, this factor supports preliminary approval.

### I. *Hanlon* Factor 7: the Reaction of the Class.

At the preliminary approval stage, evaluation of this factor is premature because notice of the settlement has not yet been disseminated to the Settlement Class. Thus, this factor is neutral.

## V. THE COURT SHOULD PROVISIONALLY CERTIFY THE CLASS FOR SETTLEMENT PURPOSES

After ensuring that the Settlement is fair, adequate, and reasonable, the Court must ensure that the four (4) requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b) are met. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Staton v. Boeing Co.*, 327 F.3d 938, 952–53 (9th Cir. 2003). Under Rule 23(a), Plaintiffs must show that the class is sufficiently numerous, that there are questions of law or fact common to the class, that the claims or defenses of the representative parties are typical of those of the class, and that the representative parties will fairly and adequately protect the class's interests. Fed. R. Civ. P. 23(a).

## A. The Settlement Class Meets the Requirements of 23(a).

***Numerosity.*** Rule 23(a) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). A class of more than forty individuals generally satisfies the numerosity requirement. *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 602–03 (C.D. Cal. 2015). Here, there are more than 6,000 Settlement Class Members. (SA at p. 1). Joinder is therefore impracticable, and the Settlement Class satisfies the numerosity requirement under Rule 23.

***Commonality.*** The Settlement Class also satisfies the commonality requirement, which requires that class members' claims "depend upon a common contention." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, as in most data breach cases, "[t]hese common issues all center on [defendant's] conduct, satisfying the commonality requirement." *In re the Home Depot, Inc.*, *Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016). Indeed, common questions include, *inter alia*, (i) whether Settlement Class Members' PII was compromised in the Data Incident; (ii) whether Defendant owed a duty to Plaintiffs and Settlement Class Members to protect their PII; (iii) whether Defendant breached its duties; and (iv) whether Defendant violated common law and statutory violations. Thus, the commonality requirement is easily met.

***Typicality.*** Plaintiffs satisfy the typicality requirement under Rule 23 because their claims, which are based on Defendant's alleged failure to protect the PII of Plaintiffs and all members of the Settlement Class, are reasonably coextensive with those of the absent class members. *See* Fed. R. Civ. P. 23(a)(3). Plaintiffs allege their PII was compromised, and that they were therefore impacted by the same

1  inadequate data security that harmed the rest of the Settlement Class. As such,

2  typicality is met here. *See Hanlon*, 150 F.3d at 1020.

3      ***Adequacy.*** The adequacy requirement is satisfied where (i) there are no

4  antagonistic interests between named Plaintiffs and their counsel and the absent

5  class members; and (ii) the named Plaintiffs and their counsel will vigorously

6  prosecute the action on behalf of the class. Fed. R. Civ. P. 23(a)(4). Here, Plaintiffs

7  are members of the Settlement Class who allegedly experienced the same injuries

8  and seek, like other Settlement Class Members, compensation for Defendant's

9  alleged data security shortcomings. Plaintiffs have no conflicts of interest with other

10 Settlement Class Members, are subject to no unique defenses, and they and their

11 counsel have and continue to prosecute this case on behalf of the Settlement Class.

12 (Borrelli Decl., ¶ 13). Further, Proposed Settlement Class Counsel have decades of

13 combined experience as class action litigators and are well suited to advocate on

14 behalf of the Settlement Class. Accordingly, the adequacy requirement is satisfied.

15 (*Id.* ¶¶ 12, 14).

16      **B. The Settlement Class Meets the Requirements of 23(b)(3).**

17      Plaintiffs also seek to certify the Settlement Class, for settlement purposes

18 only, under Rule 23(b)(3), which has two (2) components: (i) predominance; and

19 (ii) superiority. Fed. R. Civ. P. 23(b)(3). Pursuant to Rule 23(b)(3), the Court must

20 find that common questions of law or fact predominate over individual questions

21 and that a class action is the superior method for the fair and efficient resolution of

22 the matter. *Id.* Both requirements are met here.

23      ***Predominance.*** The predominance requirement "tests whether proposed

24 classes are sufficiently cohesive to warrant adjudication by representation."

25 *Amchem Prods.*, 521 U.S. at 623. As discussed above, common questions

predominate over any questions affecting only individual members. Plaintiffs' claims depend on whether Defendant used reasonable data security to protect their PII. That question can be resolved, for purposes of settlement, using the same evidence for all Settlement Class Members, making a class-wide settlement appropriate. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3)'") (citation omitted).

**Superiority.** Furthermore, Class-wide resolution is the only practical method of addressing the alleged violations at issue in this case. There are thousands of Settlement Class Members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress. *See Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."). Because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See Amchem*, 521 U.S. at 620. ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems") (emphasis added).

In sum, certification of the Settlement Class for purposes of settlement is appropriate.

## VI.   THE PROPOSED NOTICE PROGRAM CONSTITUTES ADEQUATE NOTICE UNDER RULE 23 AND SHOULD BE APPROVED.

Lastly, Plaintiffs request approval of the proposed manner and form of the notice that will be sent to the Settlement Class Members, as described in Section III(E), *supra*, and appointment of RG/2 Claims Administration as the Claims Administrator.

The proposed notice documents, which are attached to the Settlement Agreement as exhibits, clearly and concisely state the nature of the action, a summary of the terms of the proposed settlement, the deadline for requesting exclusion from the Settlement or filing an objection to the Settlement, the consequences of inaction, and will provide the date, time, and place of the final approval hearing. Thus, the notice requirements contained in Federal Rule of Civil Procedure 23(c)(2)(B) are met.

Additionally, the Claims Administrator, RG/2 Claims Administration, has a proven record of successfully administering class action settlements and should be entrusted with the execution of the notice program and the claims administration process.

## VII.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval and enter the Proposed Preliminary Approval Order submitted herewith.

Dated: April 17, 2025           By: */s/ Raina C. Borrelli*
                                Raina C. Borrelli (*pro hac vice*)
                                Andrew G. Gunem (SBN 354042)
                                STRAUSS BORRELLI PLLC
                                One Magnificent Mile

980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
raina@straussborrelli.com
agunem@straussborrelli.com

William B. Federman (*pro hac vice*)
Kennedy M. Brian (*pro hac vice*)
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
T: (405) 235-1560
F: (405) 239-2112
E: wbf@federmanlaw.com
E: kpb@federmanlaw.com

*Proposed Settlement Class Counsel*

Byron T. Ball
(State Bar No. 150195)
THE BALL LAW FIRM APC
100 Wilshire Blvd., Suite 700
Santa Monica, CA 90401
Telephone: (310) 980-8039
Facsimile: (415) 477-6710
Email: btb@balllawllp.com

*Additional Plaintiffs' Counsel*

# **CERTIFICATE OF CONFERENCE**

Pursuant to L.R. 7-3 Plaintiffs and Defendant met and conferred and Defendant does not oppose the relief sought herein.

*/s/ Raina C. Borrelli*
Raina C. Borrelli