UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01772-FWS-ADS                    Date: May 23, 2025
Title: Kyle McDaniel, *et al.* v. Toshiba Global Commerce Solutions, Inc.

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

| Maria Barr for Rolls Royce Paschal | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| Not Present | Not Present |

**PROCEEDINGS: (IN CHAMBERS) ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT [38]**

In this putative class action, Plaintiffs Kyle McDaniel, Rikki McDaniel, Jon Williams, Mojdeh Williams, and Tom Simmons (collectively, "Plaintiffs") assert claims against Defendant Toshiba Global Commerce Solutions, Inc. ("TGCS" or "Defendant") arising out of a data breach.  (Dkt. 37 ("Second Amended Complaint" or "SAC").)  The parties have reached a proposed settlement agreement (the "Settlement").  (Dkt. 38-1 (Settlement Agreement, "SA").)  Before the court is Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.  (Dkt. 38 ("Motion" or "Mot.").)  The Motion is supported by the Declaration of Raina C. Borelli.  (Dkt. 38-2 ("Borelli Declaration" or "Borelli Decl.").)  No opposition to the Motion has been filed.  (*See generally* Dkt.); *see also* C.D. Cal. L.R. 7-9 (requiring oppositions to be filed "not later than twenty-one (21) days before the date designated for the hearing of the motion," which for the noticed June 12, 2025, hearing required oppositions to be filed by May 22, 2025); L.R. 7-12 ("The failure to file any required document, or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion.").  The court finds this matter appropriate for resolution without oral argument.  *See* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."); C.D. Cal. L.R. 7-15 (authorizing courts to "dispense with oral argument on any motion except where an oral hearing is required by statute").  Accordingly, the hearing set for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01772-FWS-ADS                    Date: May 23, 2025
Title: Kyle McDaniel, *et al.* v. Toshiba Global Commerce Solutions, Inc.

June 12, 2025, is **VACATED** and off calendar.  Based on the state of the record, as applied to the applicable law, the Motion is **GRANTED**.

I.    **Background**

    A.    **Factual Background**

    "TGCS is a global market share leader in retail store technology."  (SAC ¶ 20.)  "In the ordinary course of business, Toshiba receives the PII of individuals, such as Plaintiffs and the Class, through its customers and its current and former employees."  (*Id.* ¶ 23.)

    "On an undisclosed date, Toshiba discovered suspicious activity within its email environment."  (*Id.* ¶ 32.)  "After detecting the Breach, Toshiba claims it initiated an investigation in which it determined cybercriminals infiltrated Toshiba's email environment between December 4, 2023, and March 18, 2024."  (*Id.* ¶ 33.)  "Toshiba claims the investigation of the Data Breach is still ongoing, but on May 14, 2024, it learned that personal information," including "Social Security numbers and names," "was potentially viewed by an unauthorized individual."  (*Id.* ¶¶ 35-36.)  "Despite the Data Breach beginning in December 2023, Toshiba did not begin notifying individuals of the Data Breach until May 28, 2024, with some not being notified until July 2024 or November 2024."  (*Id.* ¶ 37.)

    Plaintiffs, "victim[s] of the Data Breach [who] received a Notice of Data Breach Letter from TGCS," (*id.* ¶¶ 20-24), allege the Data Breach occurred because Defendant had "inadequate data security," "breache[d ] its duties to handle Private Information with reasonable care," and "fail[ed] to provide timely or adequate notice to Plaintiffs and Class Members that their information was compromised in the Data Breach, (*id.* ¶¶ 1, 14, 18).  Accordingly, Plaintiffs assert claims for (1) negligence, (2) negligence *per se*, (3) breach of implied contract, (4) unjust enrichment, and (5) declaratory and injunctive relief.  (*Id.* ¶¶ 178-262.)

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No. 8:24-cv-01772-FWS-ADS                                      Date: May 23, 2025
Title: Kyle McDaniel, *et al.* v. Toshiba Global Commerce Solutions, Inc.

### B.    The Proposed Settlement

"From the onset of the Litigation, and over the course of several months, the Parties engaged in arms'-length settlement negotiations that included informal exchange of information necessary to evaluate the Parties' respective strengths and weaknesses. As a result of these negotiations, the Parties reached the settlement memorialized in this Settlement Agreement." (SA at 2; *see also* Borelli Dec. ¶¶ 9-10.)

Under the Settlement, TGCS agrees to establish a non-reversionary common fund of $435,000.00 (the "Settlement Fund"). (SA ¶¶ 2.1, 2.4.) The Settlement Fund will be used for four main purposes. First, the fund will be used to reimburse class members for "actual, documented, and unreimbursed monetary loss" up to $7,500 which "was more likely than not caused by the Data Incident" and which was not reimbursed as part of a related class action, *Gregerson v. Toshiba America Business Solutions, Inc.*, 8:24-cv-01201-FWS-ADS (C.D. Cal.) ("*Gregerson*").[1]  (*Id.* ¶ 3.2; *see id.* ¶ 3.12 (excluding from recovery "Any Settlement Class Member who has submitted a valid and approved claim in the settlement of *Gregerson*").) Second, all "California Settlement Subclass Members may make a claim for a $150.00 cash payment, provided that such member has not submitted a valid and approved claim in the settlement of *Gregerson*." (*Id.* ¶ 3.4.) Third, all class members "may make a claim for a *pro rata* distribution of the cash that remains" in the Settlement Fund after claims for monetary loss, California subclass payments, service awards, attorney fees, and administrative costs have been disbursed. (*Id.* ¶ 3.5.) Fourth, the Settlement Fund will pay for attorney fees and costs, service awards for class representatives, and administrative costs. (*Id.* ¶¶ 8.1-8.3.) Proposed Class

---

[1] "The *Gregerson* Action arises from the same data security incident as the present action . . . but asserts claims against a different Toshiba subsidiary—TABS. In other words, two (2) Toshiba subsidiaries—TABS and TGCS—were impacted by the same Data Incident. There were a small number of individuals who received notice of the Data Incident from both TGCS and TABS, however the Parties were careful to ensure that the releases between the *Gregerson* Action settlement and the present action did not overlap." (Borelli Decl. ¶ 7.)

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01772-FWS-ADS                    Date: May 23, 2025
Title: Kyle McDaniel, *et al.* v. Toshiba Global Commerce Solutions, Inc.

Counsel[2] ("Counsel") intend to seek and TGCS has agreed not to oppose "up to one-third (1/3) of the Settlement Fund for … attorneys' fees, as well as any costs and expenses of the Litigation" and "an order from the Court awarding a five-thousand-dollar ($5,000.00) service award to each Representative Plaintiff in this case." (*Id.* ¶¶ 8.1-8.3.)

"In connection with these settlement negotiations, TGCS has acknowledged (without any admission of liability) that TGCS has made certain systems or business practice changes to mitigate the risk of similar data incidents in the future." (*Id.* ¶ 3.9.) Moreover, "TGCS has provided reasonable access to confidential confirmatory discovery regarding the number of Settlement Class Members and state of residence, the facts and circumstances of the Data Incident and TGCS's response thereto, and the changes and improvements that have been made or are being made to further protect Settlement Class Members' PII." (*Id.* ¶ 3.10).

In exchange for the Settlement's benefits, participating class members agree to release any claims that have been, were, or could have been asserted by any class member against TGCS and related entities and individuals "based on, relating to, concerning, or arising out of the Data Incident and alleged theft of personal information or the allegations, transactions, occurrences, facts, or circumstances alleged in or otherwise described in the Litigation as they relate to the Data Incident." (*Id.* ¶¶ 1.28-1.29, 7.1.)

**II.    Discussion**

In deciding whether to grant preliminary approval of the Settlement, the court reviews (1) the requirements for provisional class certification, (2) the fairness of the Settlement, including attorney fees, (3) the adequacy of the proposed notice, and (4) the appointment of a settlement administrator.

---

[2] The parties propose that the court appoint Raina Borrelli and Andrew Gunem of Strauss Borrelli PLLC and Kennedy M. Brian and William B. Federman of Federman & Sherwood as counsel for the class. (SA ¶ 1.26.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01772-FWS-ADS                    Date: May 23, 2025
Title: Kyle McDaniel, *et al.* v. Toshiba Global Commerce Solutions, Inc.

A.     **Rules 23(a) and (b): Provisional Class Certification**

Plaintiffs seek to certify the following class:

> [A]ll United States residents who were mailed notice by TGCS that
> their personal information was impacted in a data incident beginning
> on approximately December 4, 2023.  However, the Settlement Class
> specifically excludes: (i) TGCS, its subsidiaries, parent companies,
> successors, predecessors, and any entity in which TGCS or its parents
> have a controlling interest, and their officers and directors; (ii) all
> Settlement Class Members who validly request exclusion from the
> Settlement Class by the Opt-Out Date; (iii) any judges assigned to this
> case and members of their direct families; and (iv) any other Person
> found by a court of competent jurisdiction to be guilty under criminal
> law of initiating, causing, aiding, or abetting the criminal activity
> occurrence of the Data Incident or who pleads *nolo contendere* to any
> such charge.

(Mot. at 2-3; SA ¶ 1.32.)  Plaintiffs also seek to certify the following California subclass:

> [T]hose Settlement Class Members residing in California who were
> mailed notification of the Data Incident from TGCS at a California
> address.

(Mot. at 3; SA ¶ 1.2.)  When a plaintiff seeks provisional class certification for the purpose of
settlement, the court must ensure that the four requirements of Federal Rule of Civil Procedure
23(a) and at least one of the requirements of Rule 23(b) are met.  *See Amchem Prods., Inc. v.
Windsor*, 521 U.S. 591, 620 (1997); *Staton v. Boeing Co.*, 327 F.3d 938, 952–53 (9th Cir.
2003).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01772-FWS-ADS                    Date: May 23, 2025
Title: Kyle McDaniel, *et al.* v. Toshiba Global Commerce Solutions, Inc.

## 1.    Rule 23(a) Requirements

Under Rule 23(a), the plaintiff must show that the class is sufficiently numerous, that there are questions of law or fact common to the class, that the claims or defenses of the representative parties are typical of those of the class, and that the class representatives will fairly and adequately protect the class's interests.  Fed. R. Civ. P. 23(a)(1)-(4).

### a.    Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "No exact numerical cut-off is required; rather, the specific facts of each case must be considered."  *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009) (citing *Gen. Tel. Co. of Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980)).  "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members."  *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 602-03 (C.D. Cal. 2015); *see Tait v. BSH Home Appliances Corp.,* 289 F.R.D. 466, 473–74 (C.D. Cal. 2012); *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) ("In general, courts find the numerosity requirement satisfied when a class includes at least 40 members," while "[o]n the low end, the Supreme Court has indicated that a class of 15 'would be too small to meet the numerosity requirement.'").

In this case, the proposed class includes approximately 6,258 members.  (SA at 2 ("After discovering the Data Incident, TGCS notified approximately 6,258 individuals of the Data Incident."); Borelli Decl. ¶ 5 (same); *see* Mot. at 21 ("Here, there are more than 6,000 Settlement Class Members.").)  The court finds that such a large class size would make joinder impracticable, and proceeding as a class would promote the efficiency and economy of this action.  *See Bowdle v. King's Seafood Company, LLC*, 2022 WL 19235264, at *3 (C.D. Cal. Oct. 19, 2022) (finding numerosity in putative data breach class action with approximately 2,875 people in class); *cf. Hashemi v. Bosley, Inc.*, 2022 WL 2155117, at *2 (C.D. Cal. Feb. 22, 2022) (finding numerosity in data breach case with approximately 100,000 people in the class);

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01772-FWS-ADS                          Date: May 23, 2025
Title: Kyle McDaniel, *et al.* v. Toshiba Global Commerce Solutions, Inc.

*cf. Koenig v. Lime Crime, Inc.*, 2017 WL 11635955, at *3 (C.D. Cal. Nov. 20, 2017) (finding numerosity in data breach case with more than 100,000 people in the class). The court therefore concludes that Plaintiffs have made a sufficient showing to satisfy Rule 23(a)'s numerosity requirement at this stage of the proceedings.

### b.    Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The plaintiff must "demonstrate that the class members 'have suffered the same injury,'" which "does not mean merely that they have all suffered a violation of the same provision of law." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). Rather, the plaintiff's claim must depend on a "common contention" that is capable of class-wide resolution. *Id.* This means "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "[A] common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (cleaned up).

Here, Plaintiffs assert that commonality is satisfied because their claims turn on: "(i) whether Settlement Class Members' PII was compromised in the Data Incident; (ii) whether Defendant owed a duty to Plaintiffs and Settlement Class Members to protect their PII; (iii) whether Defendant breached its duties; and (iv) whether Defendant violated common law" or statutes. (Mot. at 21.) Because the data breach and the adequacy of Defendant's security environment are common causes of Plaintiffs' and the class' alleged injuries, the court finds Plaintiffs' allegations give rise to common questions of law and fact. *See Hashemi*, 2022 WL 2155117, at *3 (finding commonality when there were common questions of "whether Defendant breached its duty to safeguard the Class's PII, whether Defendant unreasonably delayed in notifying the Class about the data breach, and whether Defendant's security measures or lack thereof violated various statutory provisions"); *Koenig*, 2017 WL 11635955,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01772-FWS-ADS                          Date: May 23, 2025
Title: Kyle McDaniel, *et al.* v. Toshiba Global Commerce Solutions, Inc.

at *3 ("The core allegation of all Class Members is that Lime Crime did not reasonably protect
their PII and failed to notify them in a timely manner. Commonality is therefore satisfied."
(citation omitted)). Accordingly, the court concludes the commonality requirement is met.

###     c.      Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical
of the claims or defenses of the class." Representative claims are "typical" if they are
"reasonably co-extensive with those of absent class members; they need not be substantially
identical." *Castillo v. Bank of America, NA*, 980 F.3d 723, 725 (9th Cir. 2020) (quoting *Hanlon
v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). "The test of typicality is whether other
members have the same or similar injury, whether the action is based on conduct which is not
unique to the named plaintiffs, and whether other Class Members have been injured by the same
course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011)
(cleaned up). "In determining whether typicality is met, the focus should be 'on the defendants'
conduct and plaintiff's legal theory,' not the injury caused to the plaintiff." *Lozano v. AT & T
Wireless Servs., Inc.*, 504 F.3d 718, 734 (9th Cir. 2007) (quoting *Simpson v. Fireman's Fund
Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005)) (quoting *Rosario v. Livaditis*, 963 F.2d 1013,
1018 (7th Cir. 1992)).

In this case, "Plaintiffs allege their PII was compromised, and that they were therefore
impacted by the same inadequate data security that harmed the rest of the Settlement Class."
(Mot. at 21-22.) The court finds Plaintiffs' claims are "reasonably coextensive" with those of
the class. *Hanlon*, 150 F.3d at 1020; *Koenig*, 2017 WL 11635955, at *4 (finding typicality
satisfied when "Lead Plaintiffs were customers of Lime Crime and their PII was potentially
exposed during the Incident; their claims derive from the same set of facts and legal theories as
all Class Members"); *Hashemi*, 2022 WL 2155117, at *3 (similar). Accordingly, the court
concludes the typicality requirement is met.

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01772-FWS-ADS                    Date: May 23, 2025
Title: Kyle McDaniel, *et al.* v. Toshiba Global Commerce Solutions, Inc.

### d.    Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis*, 657 F.3d at 985 (quoting *Hanlon*, 150 F.3d at 1020).

Based on the record, the court finds there is no evidence of a conflict of interest between Plaintiffs and the class. *See id.*; (Mot. at 22). Plaintiffs' claims are identical to those of the other class members, and they have every incentive to vigorously pursue those claims. *See Ellis*, 657 F.3d at 985; (Mot. at 21-22). Nor is there any evidence that Counsel will not adequately represent or protect the interests of the class. *See Ellis*, 657 F.3d at 985; (Mot. at 22). Counsel is experienced in class action and data breach cases and have competently prosecuted Plaintiffs' case to date. (*See* Mot. at 22; Borrelli Decl. ¶¶ 10, 12, 14, Exs. A-B); *see Koenig*, 2017 WL 11635955, at *4 (finding adequacy when there was no apparent conflict of interest and plaintiffs were represented by counsel with extensive consumer class action litigation experience, including data breach cases); *Hashemi*, 2022 WL 2155117, at *3 (similar). The court concludes that adequacy is also satisfied here.

### 2.    Rule 23(b) Requirements

In addition to the requirements of Rule 23(a), Plaintiffs must satisfy the requirements of Rule 23(b). Here, Plaintiffs seek certification under Rule 23(b)(3) for settlement purposes only. (Mot. at 22.) Rule 23(b)(3) allows certification when (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01772-FWS-ADS                         Date: May 23, 2025
Title: Kyle McDaniel, *et al.* v. Toshiba Global Commerce Solutions, Inc.

### a.    Predominance

Although the predominance requirement overlaps with Rule 23(a)(2)'s commonality requirement, it is a more demanding inquiry. *Hanlon*, 150 F.3d at 1019. The "main concern in the predominance inquiry . . . [is] the balance between individual and common issues." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009). The plaintiff must show that "questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013).

Plaintiffs argue that common issues predominate here because the primary issue in this case is "whether Defendant used reasonable data security to protect" class members' PII. (Mot. at 22.) The court observes that courts in similar data breach cases have found similar common questions sufficient to satisfy the predominance requirement. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at *7 (N.D. Cal. July 22, 2020), *aff'd*, 2022 WL 2304236 (9th Cir. June 27, 2022) (ruling predominance satisfied because plaintiffs' case turned "on whether Yahoo used reasonable data security to protect plaintiffs' Personal Information, and on whether Yahoo provided timely notice in connection with the Data Breaches"); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312 (N.D. Cal. 2018) (finding predominance satisfied because "the focus would remain on the extent and sufficiency of the specific security measures [defendant] employed"); *Hashemi*, 2022 WL 2155117, at *4 (finding predominance in data breach case); *Koenig*, 2017 WL 11635955, at *4 ("[T]he question of whether Lime Crime exposed Class Members' PII and failed to timely notify them is common to the entire class, and predominates over individual issues."). The court finds the adequacy of Defendant's data security practices constitutes a question common to all class members that predominates over any individual issues.

### b.    Superiority

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01772-FWS-ADS                                    Date: May 23, 2025
Title: Kyle McDaniel, *et al.* v. Toshiba Global Commerce Solutions, Inc.

Class actions certified under Rule 23(b)(3) must also be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Courts consider four nonexclusive factors in evaluating whether a class action is the superior method for adjudicating a plaintiff's claims: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions, (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class, (3) the desirability of concentrating the litigation of the claims in the particular forum, and (4) the difficulties likely to be encountered in the management of a class action. *Id.*

In this case, the court finds proceeding as a class is superior to other methods of resolving claims arising from the data breach. A class action may be superior when "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). A class action may also be superior when "no realistic alternative" to a class action exists. *Id.* at 1234-35. Given the common issues presented by all class members, adjudicating these claims on an individual basis for thousands of potential plaintiffs would not be feasible. *See, e.g.*, *Bowdle*, 2022 WL 19235264, at *5 (finding superiority in data breach case with close to three thousand plaintiffs because individual litigation would have been "not only inefficient, but also unrealistic"). The court therefore concludes superiority is met here.

In summary, the court finds the requirements of Rule 23(a) and Rule 23(b)(3) are met. The court therefore **GRANTS** provisional certification of the class and California subclass for settlement purposes.

### B. Rule 23(e): Preliminary Approval of Proposed Settlement Agreement

Although there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998), a settlement of class claims requires court approval. Fed. R. Civ. P. 23(e). This is because "[i]ncentives inhere in class-action settlement negotiations that can, unless

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01772-FWS-ADS                                      Date: May 23, 2025
Title: Kyle McDaniel, *et al.* v. Toshiba Global Commerce Solutions, Inc.

checked through careful district court review of the resulting settlement, result in a decree in
which the rights of class members, including the named plaintiffs, may not be given due regard
by the negotiating parties." *Staton*, 327 F.3d at 959 (cleaned up).

Rule 23(e) governs class action settlement approval. Courts may approve class action
settlements only when they are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In
making this determination, courts must consider whether (1) the class representatives and class
counsel have adequately represented the class, (2) the proposal was negotiated at arm's length,
(3) the relief provided for the class is adequate, and (4) the proposal treats class members
equitably relative to each other. *Id.* 23(e)(2)(A–D).

### 1.      Adequacy of Class Representative and Class Counsel

As stated in the court's analysis of the Rule 23(a) factors, the class representatives and
Counsel have ably represented the class and have efficiently secured a significant settlement.
*See* Section II.A.1.d., *supra*. The court finds there is no evidence of a conflict of interest
between Plaintiffs and the class. *See id.* Plaintiffs' claims are identical to those of the class,
and Plaintiffs have every incentive to vigorously pursue those claims. *See id.* Nor is there any
evidence that Counsel will not adequately represent or protect the interests of the class. *See id.*
Plaintiffs' attorneys—Raina Borelli at Strauss Borrelli and Kennedy Brian and William
Federman at Federman & Sherwood—have extensive experience litigating complex matters,
including data breach class actions. (*See* Borelli Decl. ¶¶ 10-12, Exs. A-B.)

### 2.      Arm's Length Negotiation

Rule 23(e)(2)(B) requires that "the proposal was negotiated at arm's length." Fed. R.
Civ. P. 23(e)(2)(B). Here, the parties exchanged informal discovery and engaged in "extensive
arm's length settlement negotiations . . . over the course of several months." (Mot. at 2, 10; *see*
SA at 2 ("From the onset of the Litigation, and over the course of several months, the Parties
engaged in arms'-length settlement negotiations that included informal exchange of information

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01772-FWS-ADS                    Date: May 23, 2025
Title: Kyle McDaniel, *et al.* v. Toshiba Global Commerce Solutions, Inc.

necessary to evaluate the Parties' respective strengths and weaknesses. As a result of these negotiations, the Parties reached the settlement memorialized in this Settlement Agreement.").) There is no indication that the negotiations were collusive, and Counsel affirms that the Settlement was negotiated at arm's length. (Mot. at 2, 10; *see* SA at 2.) The court notes that the parties did not appear before a neutral mediator, which would have provided "positive evidence that settlement negotiations were conducted at arm's length." *Bailey v. Kinder Morgan G.P., Inc.*, 2020 WL 5748721, at *4 (N.D. Cal. Sept. 25, 2020). At this time, however, the court is satisfied that the Settlement was not collusive; at final approval, the court will closely examine all relevant factors to determine "whether the Settlement Agreement was truly negotiated at arm's length." *Bowdle*, 2022 WL 19235264, at *7 (granting preliminary approval where settlement was not negotiated before a neutral mediator).

### 3.    Adequacy of Class Relief

In determining whether class relief is "adequate," courts must analyze "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).[3]

---

[3] Before Congress codified these factors in 2018, the Ninth Circuit instructed district courts to apply the following factors in determining whether a settlement agreement was fair, reasonable, and accurate: "[1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement." *Roes, 1-2*, 944 F.3d at 1048; *Staton*, 327 F.3d at 959. The court still considers these factors to the extent that they shed light on the Rule 23(e) inquiry. *See Wong v. Arlo Techs., Inc.*, 2021 WL 1531171, at *8 (N.D. Cal. Apr. 19, 2021).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01772-FWS-ADS                                Date: May 23, 2025
Title: Kyle McDaniel, *et al.* v. Toshiba Global Commerce Solutions, Inc.

### a.    The Costs, Risks, and Delay of Trial and Appeal

The court observes that the Settlement reflects a substantial outcome for those affected by the data breach.  Class members are eligible for compensation in the form of out-of-pocket expense reimbursement and *pro rata* payment.  (SA ¶¶ 3.2-3.5.)  Members of the California sub-class will also receive a statutory award of $150 per person.  (*Id.* ¶ 3.4.)  If the Settlement Fund, minus the expected one-third fees and costs request, were divided equally among each class member, each person would receive over $45.00.  (*See* Mot. at 11 n.5.)  The court notes that other courts have approved settlements in privacy and security cases with much lower recovery per person.  *See, e.g.*, *In re Yahoo!*, 2020 WL 4212811, at *10 (approving a settlement fund of $117.5 million with a settlement class size of approximately 194 million and collecting cases where recovery was only a few dollars per person or less); *Hashemi*, 2022 WL 2155117, at *7 (collecting cases with estimated settlement values of less than $1 per class member).  Indeed, numerous privacy class actions have settled for non-monetary relief only.  *See, e.g.*, *Campbell v. Facebook Inc.*, 2017 WL 3581179, at *8 (N.D. Cal. Aug. 18, 2017) (granting final approval of settlement providing for declaratory and injunctive relief in litigation alleging Facebook engaged in user privacy violations), *aff'd*, 951 F.3d 1106 (9th Cir. 2020); *In re Google LLC St. View Elec. Commc'ns Litig.*, 2020 WL 1288377, at *16 (N.D. Cal. Mar. 18, 2020) (granting final approval of settlement providing injunctive relief and creating a non-distributable *cy pres* settlement fund in litigation alleging Google violated privacy by illegally gathering Wi-Fi network data).  Moreover, the Settlement offers relief beyond monetary compensation.  As part of the Settlement, TGCS "has made certain systems or business practice changes to mitigate the risk of similar data incidents in the future."  (SA ¶ 3.9.)  This nonmonetary relief benefits all class members, including those who do not submit a claim form.

The court finds the benefits class members will receive under the Settlement present a fair compromise given the costs, risks, and delay of trial and appeal.  Although litigation had not progressed far in this case, the parties had the benefit of informal discovery and significant negotiation.  (*See* Borrelli Decl. ¶¶ 9-10; SA at 2 (referencing "several months" of "arms'-length settlement negotiations that included informal exchange of information necessary to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01772-FWS-ADS                    Date: May 23, 2025
Title: Kyle McDaniel, *et al.* v. Toshiba Global Commerce Solutions, Inc.

evaluate the Parties' respective strengths and weaknesses").)  With that information, the parties
were able to realistically value the scope of Defendant's potential liability and assess the costs,
risks, and delay of moving forward with class certification, motion practice, and trial.  *See In re
Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (explaining that approving the
settlement is favored when the "parties have sufficient information to make an informed
decision about settlement" (cleaned up)); (Borelli Decl. ¶ 10 ("After thoroughly evaluating the
strengths and weaknesses of the case, Proposed Settlement Class Counsel engaged in extensive
arm's length settlement negotiations with counsel for TGCS over the span of many months.
Proposed Settlement Class Counsel used their knowledge from prosecuting other data breach
class action settlements to negotiate the Settlement achieved here.")).

Those costs and risks are not insignificant.  Because this case has not yet progressed very
far, substantial litigation costs would be required to take this case to trial.  "Numerous
depositions and document and other written discovery would be required if the case continued."
*Farrar v. Workhorse Grp., Inc.*, 2023 WL 5505981, at *7 (C.D. Cal. July 24, 2023).  "Extensive
and expensive expert discovery would also be necessary."  *Id.*  There are also significant risks
associated with class certification, summary judgment, and trial, especially in this data breach
case when connecting Plaintiffs' alleged injuries to this particular data breach may be difficult.
(*See* Borelli Decl. ¶ 15 ("Plaintiffs faced the risk of surviving motions to dismiss, motions for
summary judgment, and obtaining class certification. The class certification stage has been
proven fatal in many data breach cases."); *id.* ¶ 16 ("Plaintiffs and Proposed Settlement Class
Counsel acknowledge that proving causation and damages in the emerging area of data breach
cases can be difficult and is by no means guaranteed.  Continued litigation would require formal
discovery, depositions, expert reports, obtaining and maintaining class certification throughout
trial, and summary judgment, as well as possible appeals (interlocutory and/or after the merits).
This would also require additional rounds of briefing and the possibility of no recovery at
all.")); *see also In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *3 (N.D. Cal.
2007) ("Additional consideration of increased expenses of fact and expert discovery and the
inherent risks of proceeding to summary judgment, trial and appeal also support the
settlement."); *Hashemi*, 2022 WL 2155117, at *7 (explaining that "data breach class actions are

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01772-FWS-ADS                                    Date: May 23, 2025
Title: Kyle McDaniel, *et al.* v. Toshiba Global Commerce Solutions, Inc.

a relatively new type of litigation and that damages methodologies in data breach cases are largely untested and have yet to be presented to a jury"); *Gaston v. FabFitFun, Inc.*, 2021 WL 6496734, at *3 (C.D. Cal. Dec. 9, 2021) ("Historically, data breach cases have experienced minimal success in moving for class certification."); *see also In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26, 2007) ("Additional consideration of increased expenses of fact and expert discovery and the inherent risks of proceeding to summary judgment, trial and appeal also support the settlement."); *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement." (citation omitted)). Even if Plaintiffs could secure a better result than the Settlement represents at trial, any result obtained after additional litigation or trial would take significantly longer and there is a risk that Plaintiffs could have received much less, or nothing at all. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041-42 (N.D. Cal. 2008) (discussing how a class action settlement offered an "immediate and certain award" in light of significant obstacles posed through continued litigation); (*see also* Borelli Decl. ¶ 16 ("The Settlement guarantees relief to the Settlement Class whereas further protracted litigation would not.")).

The court finds that elimination of all these costs, risks, and delays weighs heavily in favor of approving the Settlement. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) ("The court found, with substantial support in the record, that the case is complex and likely to be expensive and lengthy to try. . . While Objectors point out that much heavy-lifting had already been done, a number of serious hurdles remained—*Daubert* motions, West's anticipated motion for summary judgment, and a motion to bifurcate. Inevitable appeals would likely prolong the litigation, and any recovery by class members, for years. This factor, too, favors the settlement."); *Curtis-Bauer v. Morgan Stanley & Co., Inc*., 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01772-FWS-ADS                          Date: May 23, 2025
Title: Kyle McDaniel, *et al.* v. Toshiba Global Commerce Solutions, Inc.

  **b.**  **The Effectiveness of the Proposed Method of Distribution of Class Relief**

  Next, the court must consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C). "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id.*

  In this case, the court finds the relief distribution is straightforward. "To file a claim, Settlement Class Members need only complete a simple Claim Form and submit it with documentation supporting any claimed losses or alternatively select a Pro Rata Cash Payment." (Mot. at 19.) Class members may submit the claim form either by mail or online. (*Id.*) The court concludes this procedure for filing claims "is not unduly demanding." *Bowdle*, 2022 WL 19235264, at *8 (approving a similar process for filing claims).

  **c.**  **Attorney Fees Award**

  Next, the court must consider "the terms of any proposed award of attorneys' fees, including timing of payment," in determining whether the class's relief is adequate. Fed. R. Civ. P. 23(e)(2)(c). When reviewing attorney fee requests in class action settlements, courts have discretion to apply the percentage-of-the-fund method or the lodestar method to determine reasonable attorney fees. *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 944–45 (9th Cir. 2011). In considering the proposed attorney fee award, the court must also scrutinize the Settlement for three factors that tend to show collusion: (1) when counsel receives a disproportionate distribution of the settlement, (2) when the parties negotiate a "clear sailing arrangement," under which the defendant agrees not to challenge a request for agreed-upon attorney fees, and (3) when the

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01772-FWS-ADS                          Date: May 23, 2025
Title: Kyle McDaniel, *et al.* v. Toshiba Global Commerce Solutions, Inc.

agreement contains a "kicker" or "reverter" clause that returns unawarded fees to the defendant,
rather than the class. *Briseno v. ConAgra Foods, Inc.*, 998 F.3d 1014, 1022 (9th Cir. 2021).

Beginning with the markers of collusion, the court finds the Settlement does not contain a
reverter clause that returns unawarded fees to Defendant. *See Briseno*, 998 F.3d at 1022.
Rather, any unawarded fees will be distributed *pro rata* among claimants. (*See* SA ¶ 3.5.)
However, the Settlement does have a "clear sailing" provision in which "TGCS has agreed not
to oppose" an award of attorney fees and costs of up to one third of the Settlement Fund. (*Id.*
¶ 8.2.) "This causes some concern for the Court because it represents some form of agreement,
by Defendant, not to oppose a motion for attorneys' fees." *Gruber v. Grifols Shared Servs. N.
Am., Inc.*, 2023 WL 8610504, at *9 (C.D. Cal. Nov. 2, 2023). This is not a "death knell" but
rather means that the court must scrutinize the agreement for signs that the fees counsel requests
are unreasonably high. *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 610 (9th Cir. 2021).
Specifically, the court must "peer into the provision and scrutinize closely the relationship
between attorneys' fees and benefit to the class." *Kim v. Allison*, 8 F.4th 1170, 1180 (9th Cir.
2021).

The fee award in this case is also above the common benchmark of 25% of the settlement
fund. *Bluetooth*, 654 F.3d at 942; *Gruber*, 2023 WL 8610504, at *9 (making a similar
observation in conjunction with expressing concern with a clear sailing agreement). At this
stage, the court "does not find any procedural inadequacies in the negotiating process or
substantive inadequacies in the Settlement Agreement's provisions that bar preliminary
approval." *In re PostMeds, Inc. Data Breach Litig.*, 2024 WL 4894293, at *5 (N.D. Cal. Nov.
26, 2024) (granting preliminary approval where counsel sought one-third of the settlement fund
with a clear-sailing provision). However, at final approval, the court will scrutinize the
Settlement closely to determine whether the clear sailing arrangement and/or the 33%
contemplated fee request are possible reflections of collusion, and also to determine whether a
departure from the 25% benchmark is warranted, including by evaluating the requested fee
award against a lodestar cross check.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01772-FWS-ADS                          Date: May 23, 2025
Title: Kyle McDaniel, *et al.* v. Toshiba Global Commerce Solutions, Inc.

In addition to the amount of counsel's fees and costs, the court must scrutinize the timing of payment. Fed. R. Civ. P. 23(e)(2)(c). The Settlement provides that any fees awarded to class counsel must be paid within thirty days of the Effective Date, which is the date when the Settlement is finally approved and is no longer under or subject to further appellate review. (*See* SA ¶¶ 8.4, 1.14.) That date is well in advance of when class members can expect to be compensated. (*See id.* ¶¶ 3.7.1-3.7.2 (describing a claims administration process that could extend months after the Effective Date).) "This could cast a slight shadow on the proposed fee and cost arrangements." *Farrar*, 2023 WL 5505981, at *10 (citing *Salas Razo v. AT&T Mobility Servs., LLC*, 2022 WL 4586229, at *13 (E.D. Cal. Sept. 29, 2022) ("[C]ounsel will receive payment at the same time as Class Members, and the timing of payment does not weigh against preliminary approval of the Class Settlement.")). Counsel does not address this issue in the Motion. (*See generally* Mot.) At this time, the court does not find that this issue warrants denial of preliminary approval, but Counsel should address this issue in their final approval briefing.

### d.    Agreements Required to Be Identified Under Rule 23(e)(3)

The court must also consider whether there is "any agreement required to be identified under Rule 23(e)(3)," Fed. R. Civ. P. 23(e)(2)(C)(iv)—that is, "any agreement made in connection with the proposal," *id.* 23(e)(3). Here, Plaintiffs represent that "there are no other agreements required to be identified." (Mot. at 18; *see* Borelli Decl. ¶ 17 ("Proposed Settlement Class Counsel represent that there are no agreements related to the settlement other than those reflected in the Settlement Agreement itself and an agreement with Claims Administrator to perform notice and settlement administration services if this Motion is granted by the Court.").)

### 4.    Equitable Class Member Treatment

The final Rule 23(e) factor turns on whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01772-FWS-ADS                                    Date: May 23, 2025
Title: Kyle McDaniel, *et al.* v. Toshiba Global Commerce Solutions, Inc.

in different ways that bear on the apportionment of relief."  Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment.

Under the Settlement, class members are eligible to submit a claim for an out-of-pocket expense reimbursement up to $7,500 and a *pro rata* cash payment.  (SA ¶¶ 3.2, 3.5; *see* Mot. at 19.)  The court finds it is reasonable to allocate more of the Settlement fund to class members with a documented injury.  *See Bowdle*, 2022 WL 19235264, at *10 (finding differing payouts based on documentation of harm to be reasonable in data breach case); *In re Omnivision Techs., Inc.*, 559 F.Supp. 2d at 1045 (distributing a settlement fund proportionately to actual injury in a securities class action).  The Settlement also treats California sub-class members differently than class members from other states based on their release of "statutory claims under California law."  (Mot. at 19.)  "This distinction is also reasonable."  *Carter v. Vivendi Ticketing US LLC*, 2023 WL 8153712, at *11 (C.D. Cal. Oct. 30, 2023) (finding it reasonable to treat California class members differently as to statutory damages).  The release is also the same for all class members.  (*See* SA ¶ 1.28.)  The court finds that the Settlement treats class members equitably.

### 5.    Service Awards for Representative Plaintiffs

Next, the court notes that the Settlement states that "Settlement Class Counsel will seek, and TGCS has agreed not to oppose, an order from the Court awarding a five-thousand-dollar ($5,000.00) service award to each Representative Plaintiff in this case."  (SA ¶ 8.3; *see also* Mot. at 20.)  Service awards or incentive awards are payments to class representatives for their service to the class in bringing the lawsuit.  *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013).  Courts routinely approve this type of award to compensate representative plaintiffs for the services they provide and the risks they incur during class action litigation.  *Rodriguez*, 563 F.3d at 958-59; *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 499 (E.D. Cal. 2010).  A $5,000 payment is "presumptively reasonable."  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015).  At final approval, Counsel should submit evidence regarding the time and effort Plaintiffs expended on behalf of the class, the

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01772-FWS-ADS                    Date: May 23, 2025
Title: Kyle McDaniel, *et al.* v. Toshiba Global Commerce Solutions, Inc.

risks they undertook, and any other relevant information.  *See Harris v. Amgen, Inc.*, 2016 WL
7626161, at *9 (C.D. Cal. Nov. 29, 2016) ("Specifically, the Court expects Class Counsel to
support its motion for final approval with [a] detailed declaration[] from the named Plaintiff[]
outlining the efforts expended and the risks taken on behalf of the class.").  However, at this
stage, the court finds the contemplated service award does not weigh against granting
preliminary approval.

**6.      Summary**

In sum, after analyzing the Rule 23(e)(2) factors, and taking into consideration the eight
factors the Ninth Circuit has provided to guide the court's Rule 23(e)(2) analysis, the court
preliminarily concludes that the Settlement is fair, reasonable, and adequate.  *See* Fed. R. Civ.
P. 23(e)(2); *Kim*, 8 F.4th at 1178; *Roes, 1-2*, 944 F.3d at 1048; *Staton*, 327 F.3d at 959.

**C.      Notice of the Proposed Settlement**

Plaintiffs also seek approval of the proposed manner and form of the notice that will be
sent to the class members.  For Rule 23(b)(3) classes, courts "must direct to class members the
best notice that is practicable under the circumstances, including individual notice to all
members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

The court finds that the proposed manner of notice is adequate.  Within fourteen days of
preliminary approval, TGCS will provide the Settlement Administrator with the name and last
known physical address of each class member.  (SA ¶¶ 2.5, 4.2.)  The Settlement Administrator
will mail a notice to each class member which will identify the data breach at issue, describe the
class benefits and how to obtain them, and direct class members to a settlement website for
more information.  (*See id.* ¶ 4.2, Exs. A, B.)  The Settlement Administrator will take steps to
ensure that class members receive notice including by using the United States Postal Service's
National Change of Address database and by performing skip traces for letters that are returned
to the Settlement Administrator.  (*Id.* ¶ 4.2.)  The Settlement Administrator will also establish a
settlement website and toll-free hotline.  (*Id.*)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01772-FWS-ADS                    Date: May 23, 2025
Title: Kyle McDaniel, *et al.* v. Toshiba Global Commerce Solutions, Inc.

The court finds proposed form of notice also meets the requirements of Rule 23(c)(2)(B), which requires that notice to class members "clearly and concisely state, in plain, easily understood language (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that the class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B); (*see* SA Exs. A-B).

**D.    Settlement Administrator**

The parties agree and propose that the court appoint RG/2 Claims Administration ("RG/2") as the Settlement Administrator. (SA ¶ 1.5; *see* Mot. at 24.) The court notes that RG/2, which the Settlement represents is "a company experienced in administering class action claims generally and specifically those of the type provided for and made in data breach litigation," (SA ¶ 1.5), has been appointed by other courts as settlement administrator. *See*, *e.g.*, *Rodriguez Perez v. First Tech Fed. Credit Union,* 2024 WL 4453291, at *9 (N.D. Cal. Oct. 8, 2024) (appointing RG/2 as settlement administrator); *Ayala v. Valley First Credit Union*, 2023 WL 7388870, at *3 (E.D. Cal. Nov. 8, 2023) (same). The court finds that it is appropriate to appoint RG/2 as Settlement Administrator. At the final approval stage, the court will evaluate the reasonableness of costs incurred by RG/2, and any motion for final approval should include evidence regarding the amount of those costs.

**III.    Disposition**

For the foregoing reasons, the court **GRANTS** the Motion. The court **ORDERS** the following:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01772-FWS-ADS                              Date: May 23, 2025
Title: Kyle McDaniel, *et al.* v. Toshiba Global Commerce Solutions, Inc.

A.    The court **APPOINTS** Plaintiffs Kyle McDaniel, Rikki McDaniel, Jon Williams, Mojdeh Williams, and Tom Simmons as Class Representatives;

B.    The court **APPOINTS** Strauss Borrelli PLLC and Federman & Sherwood as Class Counsel;

C.    The court **PRELIMINARILY APPROVES** the Settlement, subject to further consideration at the final approval stage;

D.    The court **APPOINTS** RG/2 Claims Administration as Settlement Administrator;

E.    The court **APPROVES** the form of the proposed notice and **DIRECTS** the parties and the Settlement Administrator to carry out their obligations under this Order and the Settlement; and

F.    The court sets a Final Approval Hearing for **October 2, 2025, at 10:00 a.m.**[4] in **Courtroom 10D**.  The court reserves the right to adjourn or continue the date of the Final Approval Hearing without further notice to the class.

---

[4] Should the parties believe another date is more amenable, the parties shall file a joint stipulation to continue or advance this hearing date.