_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# JS-6

## CIVIL MINUTES – GENERAL

Case No. 8:24-cv-01772-FWS-ADS                    Date: October 3, 2025
Title: Kyle McDaniel *et al.* v. Toshiba Global Commerce Solutions, Inc.

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

Damian Velazquez for Rolls Royce Paschal                    N/A
            Deputy Clerk                                      Court Reporter

    Attorneys Present for Plaintiff:            Attorneys Present for Defendant:

            Not Present                                  Not Present

**PROCEEDINGS: (IN CHAMBERS) ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT [47] AND GRANTING IN SUBSTANTIAL PART MOTION FOR ATTORNEY FEES, EXPENSES, AND SERVICE AWARDS [42]**

    In this putative class action, Plaintiffs Kyle McDaniel, Rikki McDaniel, Jon Williams, Mojdeh Williams, and Tom Simmons (collectively, "Plaintiffs") assert claims against Defendant Toshiba Global Commerce Solutions, Inc. ("TGCS" or "Defendant") arising out of a data breach. (Dkt. 37 (Second Amended Complaint, "SAC").) The parties reached a proposed settlement agreement (the "Settlement"). (Dkt. 40-1 (Settlement Agreement, "SA").) After the court granted preliminary approval of the Settlement, (Dkt. 41 ("Prelim. App. Order")), the court-appointed settlement administrator, RG/2 Claims Administration ("RG/2"), successfully gave 99% of 6,255 class members notice of the Settlement, (Dkt. 47-1 (Declaration of Dana Boub, "Boub Decl.") ¶¶ 6-8, 12, 15). The deadline for class members to postmark requests to opt out or object to the Settlement passed on July 17, 2025, and only four class members requested to opt out, and no class member objected. (Boub Decl. ¶¶ 13-14, Ex. B.) In addition, the deadline to submit a claim passed on September 22, 2025, and 1,348 claim forms were "for a claims rate of 21.6%." (*Id.* ¶ 16; Dkt. 48 (Supplemental Declaration of Dana Boub, "Supp. Boub Decl.") ¶ 5.)

    Now before the court are two motions: (1) Motion for Final Approval of Class Action Settlement (Dkt. 47, "Final Approval Motion" or "FA Mot."), and (2) Motion for Attorney

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# JS-6

### CIVIL MINUTES – GENERAL

Case No. 8:24-cv-01772-FWS-ADS                    Date: October 3, 2025
Title: Kyle McDaniel *et al.* v. Toshiba Global Commerce Solutions, Inc.

Fees, Expenses, and Service Award (Dkt. 42, "Fee Motion" or "Fee Mot."). No opposition to the Final Approval Motion or the Fee Motion has been filed. (*See generally* Dkt.) The court held a hearing on the Final Approval Motion and the Fee Motion on October 2, 2025. (Dkt. 49.) Based on the state of the record, as applied to the applicable law, the Final Approval Motion is **GRANTED**, and the Fee Motion is **GRANTED IN SUBSTANTIAL PART**.

## I.    Background

### A.    Factual Background

"TGCS is a global market share leader in retail store technology." (SAC ¶ 20.) "In the ordinary course of business, Toshiba receives the PII of individuals, such as Plaintiffs and the Class, through its customers and its current and former employees." (*Id.* ¶ 23.)

"On an undisclosed date, Toshiba discovered suspicious activity within its email environment." (*Id.* ¶ 32.) "After detecting the Breach, Toshiba claims it initiated an investigation in which it determined cybercriminals infiltrated Toshiba's email environment between December 4, 2023, and March 18, 2024." (*Id.* ¶ 33.) "Toshiba claims the investigation of the Data Breach is still ongoing, but on May 14, 2024, it learned that personal information," including "Social Security numbers and names," "was potentially viewed by an unauthorized individual." (*Id.* ¶¶ 35-36.) "Despite the Data Breach beginning in December 2023, Toshiba did not begin notifying individuals of the Data Breach until May 28, 2024, with some not being notified until July 2024 or November 2024." (*Id.* ¶ 37.)

Plaintiffs, "victim[s] of the Data Breach [who] received a Notice of Data Breach Letter from TGCS," (*id.* ¶¶ 20-24), allege the Data Breach occurred because Defendant had "inadequate data security," "breache[d ] its duties to handle Private Information with reasonable care," and "fail[ed] to provide timely or adequate notice to Plaintiffs and Class Members that their information was compromised in the Data Breach, (*id.* ¶¶ 1, 14, 18). Accordingly, Plaintiffs assert claims for (1) negligence, (2) negligence *per se*, (3) breach of implied contract, (4) unjust enrichment, and (5) declaratory and injunctive relief. (*Id.* ¶¶ 178-262.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# JS-6

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01772-FWS-ADS                          Date: October 3, 2025
Title: Kyle McDaniel *et al.* v. Toshiba Global Commerce Solutions, Inc.

## B.    The Proposed Settlement

"From the onset of the Litigation, and over the course of several months, the Parties engaged in arms'-length settlement negotiations that included informal exchange of information necessary to evaluate the Parties' respective strengths and weaknesses.  As a result of these negotiations, the Parties reached the settlement memorialized in this Settlement Agreement." (SA at 2; *see* Dkt. 45 (Amended Declaration of Raina C. Borrelli, "Borrelli Decl.") ¶¶ 4-5.)

Under the Settlement, TGCS agrees to establish a non-reversionary common fund of $435,000.00 (the "Settlement Fund").  (SA ¶¶ 2.1, 2.4.)  The Settlement Fund will be used for four main purposes.  First, the fund will be used to reimburse class members for "actual, documented, and unreimbursed monetary loss" up to $7,500 which "was more likely than not caused by the Data Incident" and which was not reimbursed as part of a related class action, *Gregerson v. Toshiba America Business Solutions, Inc.*, 8:24-cv-01201-FWS-ADS (C.D. Cal.) ("*Gregerson*").[1]  (*Id.* ¶ 3.2; *see id.* ¶ 3.12 (excluding from recovery "Any Settlement Class Member who has submitted a valid and approved claim in the settlement of *Gregerson*").)  Second, all "California Settlement Subclass Members may make a claim for a $150.00 cash payment, provided that such member has not submitted a valid and approved claim in the settlement of *Gregerson*."  (*Id.* ¶ 3.4.)  Third, all class members "may make a claim for a *pro rata* distribution of the cash that remains" in the Settlement Fund after claims for monetary loss, California subclass payments, service awards, attorney fees, and administrative costs have been disbursed.  (*Id.* ¶ 3.5.)  Fourth, the Settlement Fund will pay for attorney fees and costs, service awards for class representatives, and administrative costs.  (*Id.* ¶¶ 8.1-8.3.)  The Settlement

---

[1] "The *Gregerson* Action arises from the same data security incident as the present action . . . but asserts claims against a different Toshiba subsidiary—TABS.  In other words, two (2) Toshiba subsidiaries—TABS and TGCS—were impacted by the same Data Incident. There were a small number of individuals who received notice of the Data Incident from both TGCS and TABS, however the Parties were careful to ensure that the releases between the *Gregerson* Action settlement and the present action did not overlap."  (Dkt. 38-2 ¶ 7.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# JS-6

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01772-FWS-ADS                          Date: October 3, 2025
Title: Kyle McDaniel *et al.* v. Toshiba Global Commerce Solutions, Inc.

stated that Class Counsel— Raina Borelli at Strauss Borrelli and Kennedy Brian and William Federman at Federman & Sherwood—intended to seek and TGCS has agreed not to oppose "up to one-third (1/3) of the Settlement Fund for … attorneys' fees, as well as any costs and expenses of the Litigation" and "an order from the Court awarding a five-thousand-dollar ($5,000.00) service award to each Representative Plaintiff in this case." (*Id.* ¶¶ 8.1-8.3.)

"In connection with these settlement negotiations, TGCS has acknowledged (without any admission of liability) that TGCS has made certain systems or business practice changes to mitigate the risk of similar data incidents in the future." (*Id.* ¶ 3.9.) Moreover, "TGCS has provided reasonable access to confidential confirmatory discovery regarding the number of Settlement Class Members and state of residence, the facts and circumstances of the Data Incident and TGCS's response thereto, and the changes and improvements that have been made or are being made to further protect Settlement Class Members' PII." (*Id.* ¶ 3.10).

In exchange for the Settlement's benefits, participating class members agree to release any claims that have been, were, or could have been asserted by any class member against TGCS and related entities and individuals "based on, relating to, concerning, or arising out of the Data Incident and alleged theft of personal information or the allegations, transactions, occurrences, facts, or circumstances alleged in or otherwise described in the Litigation as they relate to the Data Incident." (*Id.* ¶¶ 1.28-1.29, 7.1.)

## C.    Notice to the Class and the Class' Response

After the court granted preliminary approval of the Settlement, (*see generally* Prelim. Appr. Order), RG/2 "processed the Settlement Class list of 6,255 names and addresses received through the United States Postal Service's ('USPS') National Change of Address database ('NCOA') and updated the data with corrected information." (Boub Decl. ¶ 7.) Then, RG/2 mailed notice to the 6,883 class members. (*Id.* ¶ 8.) After some notices were returned as undeliverable, RG/2 mailed notice to forwarding addresses and addresses found through skip-trace procedures. (*Id.* ¶ 12.) "A total of 54 Notice packets remained undeliverable. Thus, 99% of Settlement Class Members were successfully delivered Notices, while less than 1% of

**CIVIL MINUTES – GENERAL**                                              **4**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

### CIVIL MINUTES – GENERAL

Case No. 8:24-cv-01772-FWS-ADS                              Date: October 3, 2025
Title: Kyle McDaniel *et al.* v. Toshiba Global Commerce Solutions, Inc.

Settlement Class Members did not receive Notice." (*Id.*) "Following the dissemination of the Notice, it was determined that the Notice contained errors," so "RG/2 Claims promptly caused a Corrective Notice," which "included language correcting the website and Claim Form Deadline, "to be served" on class members. (*Id.* ¶ 15.)

RG/2 also created a settlement website, a toll-free phone number and email address, and a Post Office Box dedicated to the Settlement. (Boub Decl. ¶¶ 9-11.)

Class members had until August 22, 2025, to postmark any requests to opt out or object to the Settlement. (*Id.* ¶¶ 13-14.) Only four requests to opt out were received, and no objections were received. (*Id.*) Class members had until September 22, 2025, to submit claims to receive benefits. (*Id.* ¶ 16.) RG/2 received 1,348 claim forms, reflecting a 21.6% claims rate. (Supp. Boub Decl. ¶ 5.) "Of the 1,348 Claim Forms submitted: (i) 1,105 individuals selected the Pro Rata Cash Payment (currently estimated to be approximately $195.92 per cash payment, subject to change based on the total claims filed); (ii) 135 individuals selected the California Subclass Payment for a total of $20,250.00; (iii) 6 individuals selected Out-of-Pocket Expenses for a total of $18,690.00; and (iv) 220 individuals made no selection which necessitates further communication with those 220 individuals to ascertain their specific selection." (*Id.*)

## II.    Discussion

In deciding whether to grant the Final Approval Motion and Fee Motion, the court analyzes (1) whether to certify a class for settlement purposes and (2) the fairness of the Settlement.

### A.    Class Certification

Plaintiffs seek to certify the following class:

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# JS-6

## CIVIL MINUTES – GENERAL

Case No. 8:24-cv-01772-FWS-ADS                                Date: October 3, 2025
Title: Kyle McDaniel *et al.* v. Toshiba Global Commerce Solutions, Inc.

> [A]ll United States residents who were mailed notice by TGCS that
> their personal information was impacted in a data incident beginning
> on approximately December 4, 2023.  However, the Settlement Class
> specifically excludes: (i) TGCS, its subsidiaries, parent companies,
> successors, predecessors, and any entity in which TGCS or its parents
> have a controlling interest, and their officers and directors; (ii) all
> Settlement Class Members who validly request exclusion from the
> Settlement Class by the Opt-Out Date; (iii) any judges assigned to this
> case and members of their direct families; and (iv) any other Person
> found by a court of competent jurisdiction to be guilty under criminal
> law of initiating, causing, aiding, or abetting the criminal activity
> occurrence of the Data Incident or who pleads *nolo contendere* to any
> such charge.

(FA Mot. at 3; SA ¶ 1.32.)  Plaintiffs also seek to certify the following California subclass:

> [T]hose Settlement Class Members residing in California who were
> mailed notification of the Data Incident from TGCS at a California
> address.

(FA Mot. at 3; SA ¶ 1.2.)  When a plaintiff seeks provisional class certification for settlement
purposes, a court must ensure Federal Rule of Civil Procedure 23(a)'s four requirements and at
least one of Rule 23(b)'s requirements are met.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S.
591, 620 (1997); *Staton v. Boeing Co.*, 327 F.3d 938, 952–53 (9th Cir. 2003); Fed. R. Civ. P.
23(e)(1)(B)(i) (stating that notice to the class must be given "if giving notice is justified by the
parties' showing that the court will likely be able to . . . certify the class for purposes of
judgment on the proposal").

The court previously concluded that Plaintiffs presented sufficient evidence to show "the
requirements of Rule 23(a) and Rule 23(b)(3) are met."  (Prelim. Appr. Order at 6-11.)  Having
reviewed the requirements again, the court adopts its prior analysis regarding class certification

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# JS-6

## CIVIL MINUTES – GENERAL

Case No. 8:24-cv-01772-FWS-ADS                    Date: October 3, 2025
Title: Kyle McDaniel *et al.* v. Toshiba Global Commerce Solutions, Inc.

and grants certification of the proposed class for settlement purposes only. *See Atzin v. Anthem, Inc.*, 2022 WL 4238053, at *3 (C.D. Cal. Sept. 14, 2022) ("Nothing has changed to disturb that conclusion, and class certification remains appropriate."); (*see also* FA Mot. at 6 ("None of the circumstances that warranted provisional certification has changed. Thus, the Settlement Class should be maintained through entry of a final judgment.")).

## B.    Fairness of the Settlement

Although there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998), a settlement of class claims requires court approval.  Fed. R. Civ. P. 23(e). This is because "[i]ncentives inhere in class-action settlement negotiations that can, unless checked through careful district court review of the resulting settlement, result in a decree in which the rights of class members, including the named plaintiffs, may not be given due regard by the negotiating parties."  *Staton*, 327 F.3d at 959 (cleaned up).

Rule 23(e) governs class action settlement approval.  Courts may approve class action settlements only when they are "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In making this determination, courts must consider whether (A) the class representatives and class counsel have adequately represented the class, (B) the proposal was negotiated at arm's length, (C) the relief provided for the class is adequate, and (D) the proposal treats class members equitably relative to each other.  *Id.* 23(e)(2)(A-D).

### 1.    Adequacy of Class Representatives and Class Counsel

For reasons including those explained in the Preliminary Approval Order, the court finds Plaintiffs' and Class Counsel's adequacy weighs in favor of granting final approval.  (Prelim. Appr. Order at 9, 12.)  "The Court is unaware of any conflict of interest between Plaintiffs and the proposed class."  *Dean v. China Agritech*, 2012 WL 1835708, at *5 (C.D. Cal. May 3, 2012).  "Plaintiff[s'] claims are identical to those of the class and [they] ha[ve] every incentive to vigorously pursue those claims."  *Becerra-S. v. Howroyd-Wright Emp. Agency, Inc.*, 2020

## CIVIL MINUTES – GENERAL                                                7

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## JS-6

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01772-FWS-ADS                          Date: October 3, 2025
Title: Kyle McDaniel *et al.* v. Toshiba Global Commerce Solutions, Inc.

WL 8571838, at *3 (C.D. Cal. Oct. 5, 2020). "Nor is there any evidence that [Class Counsel]
will not adequately represent or protect the interests of the class." *Id.* Class Counsel has
extensive experience litigating consumer class actions and data breach cases, (Dkt. 44-1
(Declaration of Raina Borrelli in Support of Fee Mot., "Borrelli Fee Decl.") ¶¶ 11-12, Dkt. 38-
2, Exs. A, B), have ably represented the class to date including negotiating a significant
settlement, and appears "qualified and competent." *Hanlon*, 150 F.3d at 1020. Accordingly,
the court finds this factor weighs in favor of granting final approval.

### 2.      Arm's Length Negotiation

Rule 23(e)(2)(B) requires that "the proposal was negotiated at arm's length." Fed. R.
Civ. P. 23(e)(2)(B). Here, the parties exchanged informal discovery and engaged in
negotiations "[f]rom the onset of the Litigation, and over the course of several months." (SA at
2.) There is no indication that the negotiations were collusive, and Counsel affirms that the
Settlement was negotiated at arm's length. (FA Mot. at 2-3. 8; Borrelli Decl. ¶ 4.) The court
notes that the parties did not appear before a neutral mediator, which would have provided
"positive evidence that settlement negotiations were conducted at arm's length." *Bailey v.
Kinder Morgan G.P., Inc.*, 2020 WL 5748721, at *4 (N.D. Cal. Sept. 25, 2020). However, the
court observes that the settlement negotiations occurred between experienced counsel. (Borrelli
Decl. ¶ 10); *see Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *3 (C.D. Cal. May 6,
2014) ("The fact that experienced counsel involved in the case approved the settlement after
hard-fought negotiations is entitled to considerable weight.") (cleaned up). Moreover, as further
explained in Section II.B.3.c., *infra*, although the Settlement contains a clear sailing
arrangement, it does not appear to have any other "subtle signs" of collusion that courts must
police, and the clear sailing arrangement does not appear indicative of collusion. *See Roes, 1-2
v. SFBSC Mgmt.*, LLC, 944 F.3d 1035, 1048 (9th Cir. 2019). The court concludes that this
factor weighs in favor of granting final approval.

### 3.      Adequacy of Class Relief

**CIVIL MINUTES – GENERAL**                                                                  **8**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# JS-6

## CIVIL MINUTES – GENERAL

Case No. 8:24-cv-01772-FWS-ADS                              Date: October 3, 2025
Title: Kyle McDaniel *et al.* v. Toshiba Global Commerce Solutions, Inc.

In determining whether class relief is "adequate," courts consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).[2]

### a.    The Costs, Risks, and Delay of Trial and Appeal

The court finds that the $435,000 Settlement reflects a substantial outcome for class members. Class members are eligible for compensation in the form of out-of-pocket expense reimbursement and *pro rata* payment. (SA ¶¶ 3.2-3.5.) Members of the California sub-class will also receive a statutory award of $150 per person. (*Id.* ¶ 3.4.) And the most recent estimate of the value of a *pro rata* cash payment is $195.92. (Supp. Boub Decl. ¶ 5; *see* Borrelli Decl. ¶ 6 ("The Settlement provides significant cash compensation.").) Other courts have approved settlements in privacy and security cases with much lower recovery per person. *See, e.g.*, *In re Yahoo!*, 2020 WL 4212811, at *10 (approving a settlement fund of $117.5 million with a settlement class size of approximately 194 million and collecting cases where recovery was only a few dollars per person or less); *Hashemi.*, 2022 WL 2155117, at *7 (collecting cases with estimated settlement values of less than $1 per class member). And numerous privacy class actions have settled for non-monetary relief only. *See, e.g.*, *Campbell v.*

---

[2] Before Congress codified these factors in 2018, the Ninth Circuit instructed district courts to apply the following factors in determining whether a settlement agreement was fair, reasonable, and accurate: "[1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement." *Roes, 1-2*, 944 F.3d at 1048; *Staton*, 327 F.3d at 959. The court still considers these factors to the extent that they shed light on the Rule 23(e) inquiry. *See Wong v. Arlo Techs., Inc.*, 2021 WL 1531171, at *8 (N.D. Cal. Apr. 19, 2021).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# JS-6

### CIVIL MINUTES – GENERAL

Case No. 8:24-cv-01772-FWS-ADS                    Date: October 3, 2025
Title: Kyle McDaniel *et al.* v. Toshiba Global Commerce Solutions, Inc.

*Facebook Inc.*, 2017 WL 3581179, at *8 (N.D. Cal. Aug. 18, 2017) (granting final approval of settlement providing for declaratory and injunctive relief in litigation alleging Facebook engaged in user privacy violations), *aff'd,* 951 F.3d 1106 (9th Cir. 2020); *In re Google LLC St. View Elec. Commc'ns Litig.*, 2020 WL 1288377, at *16 (N.D. Cal. Mar. 18, 2020) (granting final approval of settlement providing injunctive relief and creating a non-distributable *cy pres* settlement fund in litigation alleging Google violated privacy by illegally gathering Wi-Fi network data). Moreover, the Settlement offers relief beyond monetary compensation. As part of the Settlement, TGCS "has made certain systems or business practice changes to mitigate the risk of similar data incidents in the future." (SA ¶ 3.9.) This nonmonetary relief benefits all class members, including those who did not submit a claim form.

The court finds the benefits class members will receive under the Settlement present a fair compromise given the costs, risks, and delay of trial and appeal. Although litigation had not progressed far in this case, the parties had the benefit of informal discovery and significant negotiation. (*See* SA at 2; Borrelli Fee Decl. ¶¶ 4-5.) With that information, the parties were able to realistically value the scope of TGCS' potential liability and assess the costs, risks, and delay of moving forward with class certification, motion practice, and trial. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (explaining that approving the settlement is favored when the "parties have sufficient information to make an informed decision about settlement" (cleaned up)).

Those costs and risks are not insignificant. Because this case has not yet progressed very far, substantial litigation costs would be required to take this case to trial. "Numerous depositions and document and other written discovery would be required if the case continued." *Farrar v. Workhorse Grp., Inc.*, 2023 WL 5505981, at *7 (C.D. Cal. July 24, 2023); (*see* Borrelli Decl. ¶ 21). "Extensive and expensive expert discovery would also be necessary." *Farrar*, 2023 WL 5505981, at *7; (*see* Borrelli Decl. ¶ 21). There are also significant risks associated with class certification, summary judgment, and trial, especially in this data breach case when tying Plaintiffs' alleged injuries to this particular data breach may be difficult. *See In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *3 (N.D. Cal. 2007) ("Additional consideration of increased expenses of fact and expert discovery and the inherent risks of

### CIVIL MINUTES – GENERAL                                    10

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# JS-6

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01772-FWS-ADS                          Date: October 3, 2025
Title: Kyle McDaniel *et al.* v. Toshiba Global Commerce Solutions, Inc.

proceeding to summary judgment, trial and appeal also support the settlement."); *Hashemi*, 2022 WL 2155117, at *7 (explaining that "data breach class actions are a relatively new type of litigation and that damages methodologies in data breach cases are largely untested and have yet to be presented to a jury"); *Gaston v. FabFitFun, Inc.*, 2021 WL 6496734, at *3 (C.D. Cal. Dec. 9, 2021) ("Historically, data breach cases have experienced minimal success in moving for class certification."); *see also In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26, 2007) ("Additional consideration of increased expenses of fact and expert discovery and the inherent risks of proceeding to summary judgment, trial and appeal also support the settlement."); *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement." (citation omitted)). Indeed, Class Counsel acknowledges "this litigation was inherently risky and complex. The claims involve the intricacies of data breach litigation (a fast-developing area in the law), and Plaintiff would face risks at each stage of litigation." (Borrelli Decl. ¶ 5.) Even if Plaintiffs could secure a better result than the Settlement represents at trial, any result obtained after additional litigation or trial would take significantly longer and there is a risk that Plaintiff could have received much less, or nothing at all. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041-42 (N.D. Cal. 2008) (discussing how a class action settlement offered an "immediate and certain award" in light of significant obstacles posed through continued litigation).

The Settlement removes these costs and risks "by ensuring class members a recovery that is certain and immediate, eliminating the risk that class members would be left without any recovery at all." *Graves v. United Indus. Corp.*, 2020 WL 953210, at *7 (C.D. Cal. Feb. 24, 2020) (cleaned up). "It also secures a settlement now rather than imposing the delay of additional litigation, which in this case could span years." *Farrar*, 2023 WL 5505981, at *7; (*see* Borrelli Decl. ¶ 7).

The court concludes that the elimination of all of these costs, risks, and delays weighs heavily in favor of approving the Settlement. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) ("The court found, with substantial support in the record, that the case is complex and likely to be expensive and lengthy to try. . . While Objectors point out that much

**CIVIL MINUTES – GENERAL**                                                            **11**

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01772-FWS-ADS                    Date: October 3, 2025
Title: Kyle McDaniel *et al.* v. Toshiba Global Commerce Solutions, Inc.

heavy-lifting had already been done, a number of serious hurdles remained—*Daubert* motions, West's anticipated motion for summary judgment, and a motion to bifurcate. Inevitable appeals would likely prolong the litigation, and any recovery by class members, for years. This factor, too, favors the settlement."); *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").

> **b.    The Effectiveness of the Proposed Method of Distribution of Class Relief**

Next, the court must consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C). "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id.*

In this case, the relief distribution is straightforward. Class members were able to submit by mail or online simple claim forms, either submitting supporting documentation for reimbursement or selecting a *pro rata* cash payment. (*See* FA Mot. at 16.) That 1,348 class members submitted claim forms—a 21.6% claims rate—confirms the adequacy of the process. (Supp. Boub Decl. ¶ 5.) And although "[a] portion of the claims received are in the review process," (*id.*), nothing in the record indicates that the claims process is unduly demanding. *See Bowdle*, 2022 WL 19235264, at *8 (approving a similar process for filing claims). The court therefore concludes that this factor weighs in favor of granting final approval.

> **c.    Award of Attorney Fees and Costs**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01772-FWS-ADS                          Date: October 3, 2025
Title: Kyle McDaniel *et al.* v. Toshiba Global Commerce Solutions, Inc.

Next, the court must consider "the terms of any proposed award of attorneys' fees,
including timing of payment," in determining whether the class's relief is adequate.  Fed. R.
Civ. P. 23(e)(2)(c).  When reviewing attorney fee requests in class action settlements, courts
have discretion to apply the percentage-of-the-fund method or the lodestar method to determine
reasonable attorney fees.  *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *In re
Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 944045 (9th Cir. 2011).  In considering the
proposed attorney fee award, the court must also scrutinize the Settlement for three factors that
tend to show collusion: (1) when counsel receives a disproportionate distribution of the
settlement, (2) when the parties negotiate a "clear sailing arrangement," under which the
defendant agrees not to challenge a request for agreed-upon attorney fees, and (3) when the
agreement contains a "kicker" or "reverter" clause that returns unawarded fees to the defendant,
rather than the class.  *Briseno v. ConAgra Foods, Inc.*, 998 F.3d 1014, 1022 (9th Cir. 2021).

Here, Class Counsel seeks 25% of the $435,000 Gross Settlement Amount, or
$108,750.00, plus reimbursement of $3,593.89 in litigation expenses.  (Fee Mot. at 2.)  Class
Counsel notes that "[t]his request is *less* than the amount contemplated by the Settlement
Agreement and Plaintiffs' Motion for Preliminary Approval (which contemplated 33% of the
total value of the Settlement)."  (*Id.*)  Regarding the factors tending to show collusion, the court
previously raised for the parties' attention the Settlement's "clear sailing" arrangement.
(Prelim. Appr. Order at 18 (citing SA ¶ 8.2).)  While this arrangement is concerning, it is not a
"death knell," *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 610 (9th Cir. 2021), and after
"peer[ing] into the provision and scrutiniz[ing] closely the relationship between attorneys' fees
and benefit to the class," *Kim v. Allison*, 8 F.4th 1170, 1180 (9th Cir. 2021) (citation omitted),
the court determines that the presence of the clear sailing arrangement does not indicate
collusion in this case.  As the court has explained, the Settlement provides a substantial
recovery for the class, with *pro rata* cash payments currently estimated to be approximately
$195.92 per cash payment.  (Supp. Boub Decl. ¶ 5); *see Singh v. Roadrunner Intermodal Servs.
LLC*, 2019 WL 316814, at *7-8 (E.D. Cal. Jan 24, 2019) (granting final approval despite clear
sailing provision, finding "that the requested fees are justified and do not betray the class's
interests" and that "[o]n balance, the court is satisfied that the settlement is not the product of
collusion").  Moreover, the inference of collusion from a clear sailing arrangement is

**CIVIL MINUTES – GENERAL**                                                              **13**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# JS-6

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01772-FWS-ADS                               Date: October 3, 2025
Title: Kyle McDaniel *et al.* v. Toshiba Global Commerce Solutions, Inc.

diminished when class counsel's fees are "to be made from the settlement fund," *Rodriguez*, 563 F.3d at 958, and "when the agreement lacks a reversionary or 'kicker provision,'" *In re Toys "R" Us-Del., Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 458 (C.D. Cal. 2014) (citation omitted). *See also Swain v. Anders Grp., LLC*, 2023 WL 2976368, at *10 (E.D. Cal. Apr. 17, 2023) ("Moreover, the collusion concerns raised by the clear sailing provision are minimized, however, because any fees not awarded will be distributed to the class, not revert to Anders."); *Musgrove v. Jackson Nurse Pros., LLC*, 2022 WL 18231364, at *6 (C.D. Cal. June 24, 2022) (similar). That is the case here. (*See generally* SA; FA Mot. at 18; Fee Mot. at 15.) Finally, the court finds the clear sailing arrangement is less concerning here, where the parties agreed TGCS would not oppose a fee request up to one-third of the Settlement, but Class Counsel instead seeks only 25% of the Settlement—the benchmark amount of fees. (*See* Fee Mot. at 2.)

The court further finds that the fee Class Counsel seeks is not "disproportionate." *See Bluetooth*, 654 F.3d at 947. The Ninth Circuit has held that 25% of a settlement fund is the "benchmark" for a reasonable fee award. *Id.* at 942-43. In deciding whether "'special circumstances' justify[ ] a departure" upward or downward from the benchmark, *id.* at 942, courts typically consider (1) the size of the fund, (2) the quality of the results achieved, (3) the risk counsel undertook, (4) the skill required and the quality of work, (5) the contingent nature of the fee and the financial burden carried by the plaintiff, and (6) awards made in similar cases. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002).

Here, the court finds awarding the 25% benchmark, as Class Counsel requests, is appropriate. "The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award," and class members are receiving a very significant benefit from this litigation as a result of Class Counsel's effort. *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046. Indeed, many class members are eligible to receive nearly two hundred dollars in cash, even if they have no expenses to be reimbursed. (*See* Supp. Boub Decl. ¶ 5.) The risk of litigation was real and substantial, and the fee was also contingent. (*See* Borrelli Decl. ¶¶ 5, 19-20.) It is also relevant that counsel successfully negotiated the Settlement with a company represented by a prominent litigation firm. *See Gutierrez v. Amplify Energy Corp.*, 2023 WL

**CIVIL MINUTES – GENERAL**                                                    **14**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# JS-6

## CIVIL MINUTES – GENERAL

Case No. 8:24-cv-01772-FWS-ADS                    Date: October 3, 2025
Title: Kyle McDaniel *et al.* v. Toshiba Global Commerce Solutions, Inc.

3071198, at *5 (C.D. Cal. Apr. 24, 2023) (citing *In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014) ("In addition to the difficulty of the legal and factual issues raised, the court should also consider the quality of opposing counsel as a measure of the skill required to litigate the case successfully.")).  "Finally, there is no doubt that the expertise of many of these counsel contributed to both a substantial saving of expense for the class and a maximization of the ultimate recovery."  *In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. at 1337.  In summary, the court finds "[t]here [are] no special circumstances here indicating that the 25% benchmark award [is] either too small or too large."  *In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 897-98 (9th Cir. 2017).

A lodestar cross-check also confirms the reasonableness of Class Counsel's requested award.  Courts commonly perform a lodestar cross-check to assess the reasonableness of the percentage award.  *See In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 784 (9th Cir. 2022) ("A cross-check is discretionary, but we encourage one when utilizing the percentage-of-recovery method."); *Vizcaino*, 290 F.3d at 1050 ("Calculation of the lodestar, which measures the lawyer's investment of time in the litigation, provides a check on the reasonableness of the percentage award."); *Bluetooth*, 654 F.3d at 943 (encouraging a "comparison between the lodestar amount and a reasonable percentage award"); *see also Chambers v. Whirlpool Corp.*, 980 F.3d 645, 663 (9th Cir. 2020) (confirming that a lodestar cross-check is "ordinarily" not required).

Class Counsel submitted evidence of a $71,420.00 lodestar for 109.20 hours of work, meaning the requested fee "reflects a modest positive lodestar multiplier of 1.52."  (Fee Mot. at 12, 14; Borrelli Fee Decl. ¶ 14); *see Vizcaino*, 290 F.3d at 1051.  "[C]ourts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases," and "multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied."  *Vizcaino*, 290 F.3d at 1051 n.6; *see also Gutierrez*, 2023 WL 3071198, at *6 (describing multipliers ranging from one to four as "presumptively acceptable") (citing *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014)).  The court has reviewed the information provided and concludes that the lodestar amount with the requested multiplier fairly compensates Class Counsel case given the excellent result they achieved for the class; their able

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

### CIVIL MINUTES – GENERAL

Case No. 8:24-cv-01772-FWS-ADS                   Date: October 3, 2025
Title: Kyle McDaniel *et al.* v. Toshiba Global Commerce Solutions, Inc.

and efficient representation; the investigation, discovery, negotiation, and other work performed; and the substantial risk Class Counsel undertook in this data breach class action. *See In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997) (explaining that comparing the lodestar fee to the 25% benchmark "resembles what lawyers commonly do when they draft a bill based on hours spent, consider the bottom line as compared with the value of the result, then cut the bill if the total seems excessive as compared with the results obtained"); *Pfeiffer v. RadNet, Inc.*, 2022 WL 2189533, at *3 (C.D. Cal. Feb. 15, 2022) ("Historically, data breach cases have had great difficulty in moving past the pleadings stage and receiving class certification. . . . Because Class Counsel took this case on a contingency basis in a risky and still-developing area of law, this factor weighs in favor of the proposed attorneys' fee award."). The court therefore concludes that Class Counsel's lodestar confirms the reasonableness of the fees sought.

In addition, the court has reviewed Class Counsel's request for $3,593.89 in litigation costs incurred for copies, travel, conference calls, postage, filing fees, pro hac vice fees, and legal research costs. (Fee Mot. at 12; Borrelli Fee Decl. ¶ 15.) The court observes that these are generally the types of expenses that are reasonably and necessarily incurred in litigation and routinely charged to paying clients in non-contingency cases. *See, e.g.*, *Reed v. Balfour Beatty Rail, Inc.*, 2023 WL 4680922, at *7 (C.D. Cal. June 22, 2023) (finding on final approval "expenses adequately documented and reasonable" including, among other expenses, "filing and service fees, pro hac vice motions, printing and photocopying, and postage"); *Bato v. Lab'y Corp. of Am. Holdings*, 2011 WL 13412376, at *17 (C.D. Cal. Mar. 14, 2011) (explaining that discovery costs, including related travel, "paved the way for settlement," and computerized legal research "was necessary to examine the legal basis for plaintiffs' claims" and to oppose a motion to dismiss"). And the court finds the requested $3,593.89 in litigation costs are reasonable and adequately supported by the documentation submitted.

The court will make one change, however, in calculating Class Counsel's fee: it will apply the benchmark percentage after deducting litigation and administration costs from the common fund. "In other words, to calculate attorney fees in this case, the court will apply the [percentage fee award] to the amount the class recovers." *Farrar*, 2023 WL 5505981, at *10;

### CIVIL MINUTES – GENERAL                                    16

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

### CIVIL MINUTES – GENERAL

Case No. 8:24-cv-01772-FWS-ADS                                Date: October 3, 2025
Title: Kyle McDaniel *et al.* v. Toshiba Global Commerce Solutions, Inc.

*Carter v. Vivendi Ticketing US LLC*, 2023 WL 8153712, at \*8 (C.D. Cal. Oct. 30, 2023). Calculating Class Counsel's percentage fee award before deducting costs would mean that counsel not only gets reimbursed for their costs but also receives an additional 33% of those costs as a fee. *See, e.g.*, *Smith v. Experian Info. Sols., Inc.*, 2020 WL 6689209, at \*7 (C.D. Cal. Nov. 9, 2020) (calculating benchmark fees by deducting litigation costs and settlement administrator costs from the settlement amount, and taking 25% of that amount); *In re Apple iPhone/iPad Warranty Litig.*, 40 F. Supp. 3d 1176, 1182 (N.D. Cal. 2014) (same); *Kmiec v. Powerwave Techs., Inc.*, 2016 WL 5938709, at \*5 (C.D. Cal. July 11, 2016) (same); *Kanawi v. Bechtel Corp.*, 2011 WL 782244, at \*3 (N.D. Cal. Mar. 1, 2011) (same). And deducting the settlement administrator's and independent fiduciary's costs before calculating the fee ensures that class counsel's incentive remains keeping those costs low. *See Farrar*, 2023 WL 5505981, at \*10. Subtracting from the $435,000 million Settlement amount $30,200 in settlement administration costs and $3,593.89 in litigation costs yields $401,206.11. (*See* Borrelli Fee Decl. ¶ 15; Boub Decl. ¶ 17.) 25% of that amount is $100,301.53. Accordingly, the court will award Class Counsel **$100,301.53** in attorney fees.

In addition to the amount of Class Counsel's fees and costs, the court must scrutinize the timing of payment. Fed. R. Civ. P. 23(e)(2)(c). The Settlement provides that any fees awarded to class counsel must be paid within thirty days of the Effective Date, which is the date when the Settlement is finally approved and is no longer under or subject to further appellate review. (*See* SA ¶¶ 8.4, 1.14.) That date would be well in advance of when class members can expect to be compensated. (*See id.* ¶¶ 3.7.1-3.7.2 (describing a claims administration process that could extend months after the Effective Date).) At the preliminary approval stage, the court noted that "[t]his could cast a slight shadow on the proposed fee and cost arrangements." (Prelim. Appr. Order at 19 (citing *Farrar*, 2023 WL 5505981, at \*10 (citing *Salas Razo v. AT&T Mobility Servs., LLC*, 2022 WL 4586229, at \*13 (E.D. Cal. Sept. 29, 2022) ("[C]ounsel will receive payment at the same time as Class Members, and the timing of payment does not weigh against preliminary approval of the Class Settlement."))). However, "to address the Court's concerns identified in the Preliminary Approval Order, Class Counsel will . . . request that RG/2 delay disbursing any Court approved attorneys' fees until the Settlement Class Members are issued settlement payments" such that "Class Counsel will be paid only after the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01772-FWS-ADS                     Date: October 3, 2025
Title: Kyle McDaniel *et al.* v. Toshiba Global Commerce Solutions, Inc.

Effective Date of the Settlement, and concurrently with, or after, payments to Class Members."
(Fee Mot. at 16 (citing Borrelli Decl. ¶ 24).)  Because "counsel will receive payment at the
same time as Class Members, . . . the timing of payment does not weigh against" final approval
of the Settlement.  *Razo v. AT&T Mobility Servs., LLC*, 2022 WL 4586229, at *13 (E.D. Cal.
Sept. 29, 2022); *see Perks v. Activehours, Inc.*, 2021 WL 1146038, at *6 (N.D. Cal. Mar. 25,
2021) (similar).

### d.     Agreements Required to Be Identified Under Rule 23(e)(3)

The court must also consider whether there is "any agreement required to be identified
under Rule 23(e)(3)," Fed. R. Civ. P. 23(e)(2)(C)(iv)—that is, "any agreement made in
connection with the proposal," *id.* 23(e)(3).  Here, the parties have identified no agreement
other than the proposed Settlement.  (FA Mot. at 15 ("[T]here are no other agreements required
to be identified.").)

### e.     Service Awards

Next, the court considers service awards for Plaintiffs.  Service awards or incentive
awards are payments to class representatives for their service to the class in bringing the
lawsuit.  *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013).  Courts
routinely approve this type of award to compensate representative plaintiffs for the services they
provide and the risks they incur during class action litigation, and the awards are discretionary.
*Rodriguez*, 563 F.3d at 958-59; *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 499
(E.D. Cal. 2010).  A $5,000 payment is "presumptively reasonable."  *Bellinghausen v. Tractor
Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015).

In this case, Plaintiffs each seek a service award of $5,000.  (Fee Mot. at 18.)  "Plaintiffs
expended considerable effort on behalf of the Class, including answering a detailed
questionnaire; providing essential information to Class Counsel to prosecute their claims;
collecting documents and other evidence that supported their claims; agreeing to face invasive
and time-consuming discovery (including depositions), if necessary; reviewing pleadings and

**CIVIL MINUTES – GENERAL**                                                          **18**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# JS-6

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01772-FWS-ADS                     Date: October 3, 2025
Title: Kyle McDaniel *et al.* v. Toshiba Global Commerce Solutions, Inc.

coordinating with Class Counsel as to the status of, and strategy for, the action; conferring with Class Counsel about the settlement negotiations; and considering and approving the Settlement terms on behalf of the Class." (Fee Mot. at 17-18 (quoting Borrelli Fee Decl. ¶ 22).) The court finds the requested awards, which are presumptively reasonable, are reasonable and appropriate in this case. *See Bellinghausen*, 306 F.R.D. at 266.

### 4.      Equitable Class Member Treatment

The final Rule 23(e) factor turns on whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment.

Under the Settlement, class members are eligible to submit a claim for an out-of-pocket expense reimbursement up to $7,500 and a *pro rata* cash payment. (SA ¶¶ 3.2, 3.5; *see* Mot. at 19.) The court finds it is reasonable to allocate more of the Settlement fund to class members with a documented injury. *See Bowdle*, 2022 WL 19235264, at *10 (finding differing payouts based on documentation of harm to be reasonable in data breach case); *In re Omnivision Techs., Inc.*, 559 F.Supp. 2d at 1045 (distributing a settlement fund proportionately to actual injury in a securities class action). The Settlement also treats California sub-class members differently than class members from other states based on their release of "statutory claims under California law." (Mot. at 19.) "This distinction is also reasonable." *Carter v. Vivendi Ticketing US LLC*, 2023 WL 8153712, at *11 (C.D. Cal. Oct. 30, 2023) (finding it reasonable to treat California class members differently as to statutory damages). The release is also the same for all class members. (*See* SA ¶ 1.28.) The court finds that the Settlement treats class members equitably.

### 5.      Response to Notice

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# JS-6

## CIVIL MINUTES – GENERAL

Case No. 8:24-cv-01772-FWS-ADS                     Date: October 3, 2025
Title: Kyle McDaniel *et al.* v. Toshiba Global Commerce Solutions, Inc.

Finally, in assessing the Settlement's adequacy, the court also considers the class' response to the notice. *See Alfred v. Pepperidge Farm*, 2022 WL 17066171, at *7 (C.D. Cal. Mar. 4, 2022) ("Because the notice process has been completed, the reaction of Class Members to the Settlement Agreement may be considered in evaluating whether it is fair and appropriate."). As explained, RG/2 successfully gave 99% of 6,255 class members notice of the Settlement. (Boub Decl. ¶¶ 6-8, 12.) The deadline to postmark requests to opt out or object to the Settlement passed on August 22, 2025, and only four class members requested to opt out, and no class member objected. (Boub Decl. ¶¶ 13-14, Ex. B.) In addition, the deadline to submit a claim passed on September 22, 2025, and RG/2 received 1,348 claim forms "for a claims rate of 21.6%." (*Id.* ¶ 16; Supp. Boub Decl. ¶ 5.) This indicates strong overall support for the Settlement and supports final approval. *See, e.g.*, *National Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement. It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."); *Hashemi*, 2022 WL 18278431, at *6 ("Very few objections and opt-outs create a strong presumption that the Settlement is beneficial to the Class and thus warrants final approval."); *In re Lifelock, Inc. Mktg. & Sales Practices Litig.*, 2010 WL 3715138, at *6 (D. Ariz. Aug. 31, 2010) (explaining that low number of timely written objections and requests for exclusion supported settlement approval); *Kacsuta v. Lenovo (United States) Inc.*, 2014 WL 12585787, at *5 (C.D. Cal. Dec. 16, 2014) ("Because the reaction of the class to settlement has been almost entirely positive, with only two objections, this factor favors final approval."); *Hashemi II*, 2022 WL 18278431, at *6 ("Very few objections and opt-outs create a strong presumption that the Settlement is beneficial to the Class and thus warrants final approval.").

### 6.    Summary

In sum, after analyzing the Rule 23(e)(2) factors, and taking into consideration the factors the Ninth Circuit has provided to guide the court's Rule 23(e)(2) analysis, the court concludes

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

# JS-6

Case No. 8:24-cv-01772-FWS-ADS                    Date: October 3, 2025
Title: Kyle McDaniel *et al.* v. Toshiba Global Commerce Solutions, Inc.

that the Settlement is fair, reasonable, and adequate.  *See* Fed. R. Civ. P. 23(e)(2); *Kim*, 8 F.4th at 1178; *Roes, 1-2*, 944 F.3d at 1048; *Staton*, 327 F.3d at 959.

**III.    Disposition**

For the foregoing reasons, the Final Approval Motion is **GRANTED.**  The Fee Motion is **GRANTED IN SUBSTANTIAL PART.**  Specifically, the Fee Motion is **GRANTED** in all respects except that the court calculates the attorney fee award by applying the percentage fee award after deducting litigation and administration costs from the common fund, for a total attorney fee award of **$100,301.53.**